*Fairfield,*
June,
1826.

Canfield
*v.*
Hard.

---

## JOHNSON *against* SCRIBNER.

Affirmative testimony, from its nature, is, generally, of greater weight and better entitled to credit, than negative testimony.

The want of means or opportunity to the witness of knowing the matters in controversy ; his actual inattention ; the absence of circumstances likely to excite his attention ; or the existence of circumstances likely to divert it; are considerations, which greatly diminish the effect of negative testimony.

The testimony of different witnesses, apparently inconsistent, is so to be construed, if possible, as to exempt them from the imputation of perjury.

Therefore, where three witnesses, adduced by the plaintiff, in an action of slander, testified explicitly to the speaking of the words charged, in a ball-room, where there was a dancing assembly, with the music of a violin, and where a *fracas* took place, followed by much confusion, at or about the time referred to; and eleven witnesses, adduced by the defendant, testified, that they were in the room, and heard no such words as the plaintiff's witnesses had sworn to ; and that, in their opinion, they should have heard them, if they had been uttered ;

*Fairfield,*
*June,*
*1826.*

Johnson
*v.*
Scribner.

it was held, that the latter evidence was clearly overbalanced, by the former; and a verdict being given for the defendant, a new trial was granted, on the ground that such verdict was manifestly against the weight of evidence.

The rule that a new trial is not to be granted where there was evidence on both sides, is not applicable to a case where the weight of testimony on one part was entirely disregarded, or was countervailed, by evidence, which, from its nature, ought to have little or no effect.

A new trial will not be refused in an action of slander, on the ground of its being a penal action, or in the nature of one.

Where a new trial is granted on the ground that the verdict was manifestly against the weight of evidence, the party moving for such new trial, will not be subjected to the payment of costs.

This was an action of slander. The declaration, after averring the good character of the plaintiff, stated, that a transient person, by the name of *Willis Cole,* came to a sudden and untimely death in *Norwalk,* from causes unknown to the plaintiff, and in which he had no agency; and that the defendant, in a conversation with divers good citizens, concerning the death of *Cole,* charged the plaintiff with having murdered him.

The cause was tried, on the plea of *not guilty,* without notice of special matter, at *Fairfield, December* term, 1825, before *Hosmer,* Ch. J.

The introductory averment in the declaration relative to the death of *Cole,* was admitted to be true; and whether the words alleged were spoken, by the defendant, of the plaintiff, was the sole question. The place of speaking the words, if they were spoken, was a room of some size, occupied as a ball-room; and a dancing assembly was held, with the music of a violin, at or about the time in question. A *fracas* took place in the room, and much confusion ensued, not far from the same time. The plaintiff adduced three witnesses, *viz. Moses Williams,* who testified, that the defendant said, " Here is *Johnson,* that murdered a man in his own house;" *Burr Saunders,* who testified, that the defendant said, alluding to the plaintiff, " That damned *Johnson* murdered a man a few days ago, in his own house;" and *Charles Fairchild,* who testified, that the defendant, alluding to the plaintiff, called him " a *Norwalk* murderer, who murdered a man in his own house." *Elias Hendrick* and *Alanson Cooley,* witnesses adduced by the defendant, testified, that at the time the plaintiff was quitting, or had quitted, the room, he charged the defendant with speaking the words, and he denied it. Eleven other witnesses adduced by the defendant, testified, that they were in the room; that they heard no such words as

the plaintiff's witnesses swore to ; and that, in their opinion, they should have heard them, if they had been uttered. They also testified to the noise and controversy in the room. No proof was offered to impeach the general character of any of the witnesses.

The cause being submitted to the jury on this evidence, they brought in their verdict for the defendant. The Chief Justice returned them to a second, and then to a third consideration, remarking to them, that the testimony of three witnesses of unimpeachable character, directly supporting the words alleged, and contradicted by no testimony, except the negative testimony of the defendant's witnesses, clearly established the plaintiff's allegations. The jury still adhering to their verdict, the Chief Justice, being of opinion that it was against the evidence in the cause, made a statement of such evidence, and reported it to this Court for their opinion on the question of granting a new trial.

*Sherman* and *Betts* argued in favour of a new trial.

*Sherwood* and *Bissell*, contra.

Hosmer, Ch. J. The plaintiff brought an action of slander against the defendant for falsely and maliciously saying of him, that he was a murderer.

At the trial, on the plea of not guilty, and without notice of any justification, the words spoken were proved, most explicitly, by three unimpeached witnesses.

The place where they were uttered, was a ball-room, where a dancing assembly was convened, and a violin was playing, at, or about the time they were published. To add to the confusion of the scene, a *fracas* took place at nearly the same period; and it is an inference all but certain, that the attention of the persons present, for the most part, must have been directed to the different objects above-mentioned. A number of witnesses were adduced by the defendant, who testified, that they heard no such words spoken as the plaintiff was endeavouring to establish ; and that, in their opinion, they should have heard them, if they had been uttered. From the silence of the motion in this case, it may be assumed, that the attention of the witnesses was not called to the conversation of the defendant ; and that the words charged may have been uttered

under such circumstances, that they were not in a situation to hear them, and had no notice to regard them. It is reasonable to suppose, that in common with others, they were listening to strains of music, and carried away with the fascinations of the amusements they came to enjoy, so far as their minds were not engrossed, by the turbulent events that had taken, or were taking place. It, likewise, is not improbable, that the noise alone might have rendered it impossible for the defendant's witnesses, to hear the expressions used by the defendant, had their attention been excited to hear them. The inferences I have drawn derive confirmation, by the act of the court, in returning the jury to the third consideration ; and on the observation of the judge, that the testimony of three witnesses of unimpeachable character, directly supporting the words alleged, and contravened by no proof, except the negative evidence of the defendant's witnesses, clearly established the plaintiff's allegations.

If a witness swear positively, that he saw or heard a fact, and another who was present, that he did not see or hear it; and the witnesses are equally faithworthy ; the affirmative witness is to be believed. If he testify untruly, he is guilty of perjury ; but it by no means will follow, that the negative witness would be perjured, although the affirmative were true. The falsity of his testimony, if it actually were false, might be attributed to inattention, mistake or defect of memory ; and therefore, independently of the usual presumption in behalf of innocence, the probability is strongly in favour of the affirmative. If in a comparison between the witnesses, in respect of the means and opportunity, which they have had, of ascertaining the facts to which they testify, it turns out that the one has had more competent and adequate means of information than the other, or that under the circumstances of the case, the attention of the witness testifying that he did not see or hear, was not so likely to be so fully excited and particularly directed to the facts, as that of the one who swears affirmatively, this principle cooperates with the one first stated, in all cases, where there is room for error and mistake. It is true, that evidence of a negative nature may, under particular circumstances, not only be equal, but superior, to positive evidence. This must always depend on the question, whether the negative testimony may be attributed to inattention, deficient means of knowledge, error or defect of hearing. If two persons listen attentively to a con-

versation between others, for the express purpose of ascertaining the words spoken, there would be little reason for ascribing the variance between their positive and negative testimony, to inattention or mistake ; and the only enquiry would be, as to the credit of the witnesses.   But if one person has the means of information, and attentively employs them, and the mind is in entire uncertainty, whether another person, or many others, had the means of knowing, or exercised any attention on the subject, the positive testimony of the former clearly outbalances the negative of the latter.

Where there is an apparent inconsistency or contradiction in the testimony of witnesses, such construction shall be put upon it, as to make it agree, if possible ; for perjury is not to be presumed.   The reconciliation of the evidence, in this case, is perfectly easy.   The affirmative witnesses have testified to the truth, or, *prima facie*, they are perjured.   The witnesses, who have sworn, that they did not hear, may have testified truly ; perhaps through deficient means of knowledge, or inattention to the conversation, relative to which they have given evidence. And this presumption, founded as it is in law and common candour, is powerfully enforced, from the noise and tumults, and attractions, with which they were surrounded ; and the still further probability, that they were not within earshot of the defendant's conversation.   The inference is unquestionable, that the verdict is manifestly and palpably against the weight of evidence, and the facts ought to be submitted to another jury, that they may be investigated, and considered with great deliberation and attention, in order to correct any mistake that may have intervened.   For nothing is more preposterous than the idea, that the mistaken decision of one jury, a fallible tribunal, may not be corrected, by the reexamination and determination of another.

The rule that a new trial is not to be granted where there was evidence on both sides of the cause, has no application here, nor is it ever applicable to a case where the weight of testimony on one part has been entirely disregarded, and countervailed by the most feeble evidence, or no evidence in effect, on the other.

The action of slander is not a penal action, nor in the nature of one ; although the latter idea has someties been acted on. A good character is preferable to great riches ; and when assailed by the malice and falsehood of another, and perhaps

prostrated for a time in the dust, why should it not be vindicated, in the same manner, and with the same latitude, as an injury to property ? I consider the observation to have been greatly misapplied. This action is sometimes brought unnecessarily and vindictively, not to support reputation, but to gratify revenge. In a case thus circumstanced, the action may, in its nature, without transgressing the usual rules of speech, be considered, virtually, as penal. But that an honest man, of fair character, should falsely and maliciously be stigmatised as a murderer, and when he resorts to the law for the only vindication it can impart, shall be inhibited from a pursuit of justice in all its forms, shocks all my ideas of propriety. And to illustrate the point a little further; when the person calumniated proves his case, and is deprived of a verdict, through a palpable misdetermination of the jury, that then there should be a rule to prevent the rectification of the error, in the ordinary mode of a new trial, would evince a great disregard to the sacred right of reputation.

A new trial ought to be granted, without payment of costs ; for the court is not called on to grant a boon to the party, but correct the misdetermination of a jury.

The other Judges were of the same opinion, except BRAINARD, J., who was absent.

New trial to be granted.