### NICHOLS *against* ALSOP.

The acknowledgment of a party, by subscribing his name to an account current, is not conclusive evidence of indebtedness to the amount therein stated, but is capable of being rebutted, by other competent proof.

In an action of *assumpsit* for money paid, money lent, and goods sold and delivered, it is competent for the defendant, under the general issue, with notice of a set-off, to shew a balance due to him, on an account stated, sufficient to extinguish the claims of the plaintiff; and this being shewn, if the jury do not allow it, the verdict may be set aside as against evidence.

This was an action of *indebitatus assumpsit* for money paid, for money lent, and for goods sold and delivered; tried at *Middletown, February* term, 1827, before *Peters*, J.

To each of the counts the defendant pleaded the general issue, and gave notice of a set-off. It was proved, on the trial, that the defendant was indebted to *Bull & Nichols*, of whom the plaintiff is the survivor, for money paid, in the sum of 310 dollars, 3 cents; for money lent, 30 dollars; and upon an account stated, consisting of a great variety of items, amounting to more than 17,000 dollars, a balance of 523 dollars, 83 cents; these being all the items claimed by the plaintiff. It appeared, that in the account the sum of 1500 dollars was charged to the defendant, for one half of a vessel, called the *Gipsey*, sold to him by *Bull & Nichols*, on the 27th of *January*, 1813. In proof of the account, the plaintiff relied solely on the fact, that the defendant, on the 23rd of *May*, 1813, had acknowledged this balance, by affixing to the account current his signature. The defendant did not deny this, nor question the bill of sale to him of one half of the vessel, but rested his defence on the fact, that *Bull & Nichols*, at the date of the bill of sale, did not own, nor ever afterwards owned, more than the amount of 327 dollars, 17 cents, in the vessel, and that when he purchased the one half, and when he signed the account current, he was ignorant of what the right of *Bull & Nichols* in the vessel was, and verily supposed, that they owned one half of her, which was of the value of at least 1500 dollars. The plaintiff insist-

ed, that the defendant was bound, by his admission ; and that he, the plaintiff, was entitled to have the whole 1500 dollars allowed him, and to recover the balance, which appeared from the face of the account to be due him.

The defendant introduced the contract, dated the 3rd of *February*, 1812, under which the vessel was built. This contract was entered into, by *Sylvester Hubbard, David C. Hubbard, John Brainerd, Bull & Nichols*, and *David Spencer*. The two *Hubbards* were to perform the carpenter work ; *Brainerd* was to furnish the timber, spars, &c. ; *Spencer* to do the iron work ; and *Bull & Nichols* to supply cordage necessary to rig her.— The parties were to be responsible for the proportions of the vessel as follows, and to own in her like proportions, *viz.* the *Hubbards*, each one eighth ; *Brainerd*, one eighth ; *Spencer*, one quarter ; and *Bull & Nichols*, three eighths. They were to advance the amount of 300 dollars a quarter, or at that rate, as might necessarily be wanted for carrying on the building of the vessel. The *Hubbards, Brainerd* and *Spencer* agreed to wait, for a reimbursement of their expenditures, until money could be raised from the sale, or other means, of the vessel ; and *Bull & Nichols* were to furnish cordage for the vessel, at the usual time of credit, if the vessel did not command cash.

The defendant proved, by undoubted testimony, that *Bull & Nichols* never advanced towards the *Gipsey* but 317 dollars, 17 cents ; and that, on the 27th of *January*, 1813, at the time of the sale, she was not completed, nor until a long time afterwards. When completed, she was registered, and her papers taken out, in the name of the other parties to the contract, at whose expense she was so completed. In *July*, 1815, she was sold for 6000 dollars.

The plaintiff offered no evidence to contradict or qualify the defendant's testimony relative to the vessel.

The judge instructed the jury, that the defendant was not concluded, by the account stated ; and that if they should find, that the defendant, by the bill of sale from *Bull & Nichols* to him, did not acquire a title to half of the vessel, or to more than three eighths thereof, they must take *that* into consideration in making up their verdict, and allow the plaintiff no more of the 1500 dollars than *Bull & Nichols* had advanced towards the vessel.

But the jury, notwithstanding the evidence and charge, returned a verdict for the defendant to recover 852 dollars, 98

cents, and costs; and the defendant moved for a new trial, on the ground that the verdict was against evidence.

*Dana* and *Sherman*, in support of the motion.

*Stanley* and *Storrs*, contra.

PETERS, J. Though there is no count upon an *insimul computassent*, yet as the defendant had given notice of a set-off, it was competent for the jury to have made the set-off, as claimed by the defendant; so that instead of a balance of 523 dollars, 83 cents, upon said account, there would have been found due to the defendant upon said account a sum more than sufficient to extinguish the claims of the plaintiff for money paid and lent; which would have entitled the defendant to a verdict.

I, therefore, advise a new trial.

DAGGETT, J. To give the utmost effect to the acknowledgment of the defendant, it was only evidence of indebtedness to the amount of 1500 dollars, capable of being rebutted, by competent proof that the right of *Bull & Nichols* in the vessel was only of the value of 327 dollars, 17 cents. Such proof was given, and ought to have prevailed, unless it was satisfactorily proved, that it was a bargain of hazard. But, besides that there is no pretence that it was thus a bargain of hazard, it cannot escape observation, that he bought *half*, when *Bull & Nichols* were, in no event, to own but three eighths, nor to that amount, unless they complied with the contract, by corresponding advancements.

Suppose *Bull & Nichols* had not sold, and were now plaintiffs, seeking to recover one half or three eighths of the 6000 dollars, for which the *Gipsey* was sold, of the other owners; their claims certainly would be very bald; for obviously, they could have no right beyond their advancements. But, by selling a part of an unfinished vessel, can they place the purchaser in a better condition than they were in themselves? I think not.

I go further. Had the defendant given his note to *Bull & Nichols* for the 1500 dollars, while it remained in the hands of the original promisee, it would have been subject to a reduction down to the 327 dollars, 17 cents. *The Phœnix Insurance*

*Middlesex,*
July,
1827.

Nichols
*v.*
Alsop.

*Company* v. *Fiquet,* 7 *Johns. Rep.* 385.   The defendant might have shewn, that the note was given for more than the plaintiff was entitled to.

It is also established, law, that if goods are sold as of a certain quality, and they turn out to be of an inferior quality, the vendee, when sued for the purchase money, may, by a kind of equitable set-off, have a reduction of the damages. *Miller* v. *Smith,* 1 *Mason* 437.   The doctrine is carried so far, by Lord *Ellenborough,* that if the defendant in an action for the purchase money, does not avail himself of this defence, he shall not be permitted to recover, in a cross action, for any deficiency in value. *Fisher* v. *Samuda* & al. 1 *Campb.* 190.   See also *Basten* v. *Butter,* 7 *East* 479.

I discover no difference in principle between these cases and the one under consideration.   I am, therefore, well satisfied, that it would be very inequitable for the plaintiff to recover; and the law is therewith consistent.   I would, therefore, advise a new trial, as the verdict is against the justice of the case, and unsupported by evidence.

The other Judges were of the same opinion.

New trial to be granted.