### NEWELL *against* WRIGHT.

Where the defence to an action by the indorsee against the indorser of a promissory note, was supported by the testimony of the maker alone, for whose accommodation it was made and indorsed, after being discharged by the defendant; and it appeared, that this witness had, in one instance, given a written order to a correspondent to pay the full

amount of the note and take it up; and that in two instances, by letters addressed to the plaintiff, and in one, by verbal communication with a third person, he had made statements inconsistent with his testimony in court; in addition to which his general character for veracity, was, in some degree, impeached; it was held, that the defence was not supported, by the testimony of one credible witness; and a verdict given for the defendant, on such testimony, was set aside as against evidence, and a new trial granted.

THIS was an action in favour of the holder of a negotiable promissory note, dated the 24th of *June* 1829, for 750 dollars, made by *Henry Benton*, payable to the defendant, and by him indorsed to the plaintiff.

The defendant pleaded *non assumpsit,* and accompanied the plea with notice that he should prove the following facts, on the trial, *viz.* That the note was delivered to the plaintiff, on or about the 25th of *June*, 1829, indorsed by the defendant, for the accommodation of the maker, for 300 dollars, borrowed, by *Benton*, of the plaintiff; that for this sum *Benton* gave his check on the *Hartford Bank*, and deposited the note as collateral security for the payment of the check, upon condition, that when the check should be paid, the note should be given up to be cancelled; and that *Benton* never received any other or further consideration, nor was any other given by the plaintiff.

The cause was tried, on this issue and notice, at *Hartford, February* term, 1831, before *Peters*, J.

The making of the note, the indorsement of it by the defendant, due presentment and demand of payment and notice of non-payment to the defendant in due time, were admitted. It was, consequently, admitted, that the plaintiff was entitled to recover the whole amount of the note, unless the facts stated in the notice were true; and the only question on the trial, was, whether the defendant had proved them.

In the first place, the defendant introduced the deposition of *Henry Benton*, taken *ex parte*, in the city of *New-York*, who testified, That on the 25th of *June*, 1829, he made and delivered his check on the *Hartford Bank*, to *Lot Newell*, the plaintiff, for 300 dollars, which sum the deponent then received of him, on a loan; that the deponent, at the same time, deposited the note in a suit as collateral security for the payment of the check, upon the condition that when the check should be paid, the note should be given up to be cancelled; that the note was indorsed by the defendant, for the sole accommodation of the

deponent, who alone was interested in it ; that the 300 dollars, which the deponent so received of the plaintiff, was the only consideration or thing of value, which he ever received for the note and check ; and that this sum, with the interest thereon, is all that is due to the plaintiff in respect of the transaction ; that at the time of the deponent's giving the check and note to the plaintiff, he took a receipt therefor, which he has since repeatedly looked for, but cannot find, owing to the derangement of his papers, some months since ; that for this reason, he cannot state the exact words of it, but it was to this effect, *viz.* that the plaintiff received of the deponent, at the time of this transaction, the note in question, as collateral security for the payment of said sum of 300 dollars, and that the note was to be given up, on the payment of that sum.

Previous to the taking of *Benton's* deposition, the defendant had given him a discharge from all claims and liabilities arising out of the transaction ; which discharge was produced on the trial ; and no question was made as to *Benton's competency.*

The defendant also introduced the testimony of *Charles L. Porter,* a clerk in the *Hartford Bank,* shewing, that it appeared from the books of the bank, that on the 21st of *September,* 1829, the bank received said note for collection from the *Merchant's Bank* of *New-York,* indorsed by the defendant, and by two other persons, whose names are now erased ; and that the plaintiff's name was never indorsed on the note.

The plaintiff, on his part, introduced the following evidence. 1. *Henry Benton's* order on *William G. Munt,* in these words : " Mr. *William G. Munt,* Sir, Pay to Mr. *L. Newell,* or his order, the amount of my note, dated *June* 24th, 1829, of 750 dollars, and take the note of Mr. *Newell,* and charge the same to my account. Also, accept and pay my draft on you of 525 dollars, dated *July* 14th, 1829, whenever said draft is due.

*Hartford, August* 8th, 1829.            *Henry Benton.*"

2. A letter from *Benton* to the plaintiff, dated *New-York, August* 18th, 1829, in which he says : " I have seen *Munt,* who says he will pay you the 750 dollar note. Do not, for God's sake, leave this city, without giving him the note of 750 dollars, and getting the cash. Stay until I see you. Your expenses shall be paid."

3. A letter from *Benton* to the plaintiff, dated *New-York, September* 23rd, 1829, as follows : " Dear Sir, Yours of the 14th inst. I received yesterday. I am now ready to pay you the

*Hartford,*
*June, 1831.*

*Newell*
*v.*
*Wright.*

amount of the 750 dollar note, which I wish you to send to some friend of yours, by return boat, and inform me where I can pay it. I stick to *Clinton* street, as formerly ; and in case my body is liberated next *Monday,* you will see me in *Hartford,* immediately after ; when I hope to be able to square all transactions according to past agreements. Do not fail to send the note immediately, as I am ready to take it up."

4. The deposition of *Ralph Wells,* of the city of *New-York,* as follows : " In the latter part of *September,* 1829, a person called on me in the city of *New-York,* and enquired if I held a note of *Henry Benton's* for 750 dollars ? I replied, that it was deposited for collection in the *Merchant's Bank ;* and, upon repairing to it, we found that it had been forwarded to *Hartford* for collection. He observed, that he was sorry it had been sent on ; as he wished to pay it here. The note was dated," &c. [describing the note in suit.] The deponent added, that he had since seen a man in the steam-boat, called *Henry Benton,* and who answered to that name, whom he verily believed to be the person who called on him as above stated.

To impeach the character of *Benton,* the plaintiff also introduced fourteen witnesses ; four of whom testified, that his character for veracity was bad : of these four, however, two admitted, that they had had controversies with him : and nine of the remaining ten testified, that it was bad since his failure in business, in *June,* 1829, but that it was previously on a par with that of mankind in general.

The defendant called nine witnesses ; four of whom testified, that his character was on a par with that of mankind in general ; and the remaining five, that previous to his failure in business, (in which he had been extensively engaged) his character was good, but since that period, it had not been good.

Most of the witnesses, on being interrogated, testified, that the bad character of *Benton* for veracity did not arise from his non-fulfilment of his contracts, but from other causes.

The jury returned a verdict in conformity with the claim of the defendant ; the plaintiff moved for a new trial, on the ground that the verdict was against the evidence in the cause ; and the judge made a statement of that evidence, which was presented to this Court for its opinion thereon.

*N. Smith* and *Toucey,* in support of the motion, commented minutely on the evidence, insisting that the claim of the defend-

ant was unsupported by the testimony of one *credible* witness, and that it was opposed to the explicit acknowledgments, written and verbal, of the witness relied on.

*W. W. Ellsworth* and *J. Griswold,* contra, contended, 1. That if the court were in the place of the jury, the evidence was sufficient to justify the verdict.

2. That as *Benton,* the principal witness, had undoubted means of knowledge, the only question related to his *credit ;* and on *that* it was the peculiar province of the jury to decide.

3. That the evidence must be *manifestly and palpably* against the weight of evidence, to authorize the granting of a new trial, on that ground, *in any case. Palmer* v. *Hyde,* 4 *Conn. Rep.* 426.

4. That a new trial will not be granted where there is evidence *on both sides,* unless the jury have *wholly disregarded* the evidence on one side. *Anon.* B. R. 1 *Wils.* 22. *Ashley* v. *Ashley,* and *Smith* v. *Huggins,* 2 *Stra.* 1142.

DAGGETT, J.   It was agreed, on the trial, that the note in suit was made and indorsed ; that payment was demanded, and notice of non-payment given in due time ; and that the plaintiff, therefore, was entitled to recover the amount of the 750 dollars and interest,—unless the facts alleged in the notice were substantially proved.

In proof of these facts, the deposition of *Henry Benton,* (he having been by the defendant previously discharged from all liability to him,) was read to the jury.   The deponent swears to the facts stated in the notice.   He also swears, that when he deposited the note, he took of the plaintiff a receipt expressive of the facts as alleged in the notice, to wit, that the note should be cancelled, upon the payment of the check of 300 dollars ; and that the receipt, in the derangement of his affairs, had been mislaid ; and that he had searched repeatedly for it, and could not find it.   This is the whole proof introduced by the defendant.

We may well pause here, and enquire, or rather express our doubts, whether the defendant has substantiated, by competent proof, the facts on which he relies.   The single testimony of the maker of the note, swearing to facts which go to impeach this note, negotiable in its inception, and by him negotiated, can hardly be said to be free from suspicion.   Such testimony was

not admissible in our courts until the case of *Townsend* v. *Bush.* 1 *Conn. Rep.* 160. This testimony is now inadmissible, it is believed, in *Massachusetts, New-York* and *Pennsylvania.* Add to this, the lame account he gives of the receipt, is not entirely satisfactory. He does not testify to its loss, nor to the loss of his papers generally ; but it is mislaid,—his papers have been deranged,—he has searched for it, and cannot find it. This is the amount of his testimony on that point,—an all-important point to be established, before the secondary evidence could have been admitted.

If the objections to the testimony ended here, it might well be doubted, whether the great fact on which the defence rests, is proved, by the testimony of one credible witness, the least evidence required to establish a fact in a court of justice.

The deposition is liable to this objection, that it was taken *ex parte ;* and, of course, there was no opportunity given for cross-examination.

But the testimony on the part of the plaintiff goes far to destroy all reliance on this deponent. There is not only nothing to corroborate him, but much to impeach him. Several witnesses swear, that his character for truth is bad, without any qualifications. Several, introduced by the defendant, concur in this declaration ; but they would confine it to a period since his failure in 1829 ; and most of the witnesses, on being interrogated, testified, that this reputation was not gained, by a non-fulfilment of his contracts, but from other causes. His credibility, then, may well be questioned. Still, however, as the jury have found their verdict upon this proof, the court might hesitate to disturb it, were it not for the strong and almost irresistible testimony arising out of the documents under the hand of the witness, and the deposition of *Ralph Wells*, all speaking the same language.

The order on *William G. Munt,* drawn by *Henry Benton,* the witness, of the 8th of *August* 1829, directs him to pay the amount of this note of 750 dollars, to the plaintiff, and take it up. The letter of the witness to the plaintiff, of the 10th of the same *August,* directly recognizes the note, and requests him to obtain the amount of *Munt.* His letter of the 23rd of *September*, 1829, says : " I am now ready to pay you the amount of the note for 750 dollars, which I wish you to send to some friend of yours, by return boat, and inform me where I can pay it." And again : " Do not fail to send the note immediately,

as I am ready to take it up." The deposition of *Wells* is full to the fact, that in the latter part of *September*, 1829, he saw *Benton* in *New-York*, who enquired of him if he held the note of 750 dollars, and on finding that it was sent for collection to the *Hartford Bank*, expressed his regret, saying, that he wished to pay it in *New-York*.

I feel no disposition to invade the province of the jury. They are constituted judges of the facts, in every case, with the aid of the court; and this should be conceded to them. At the same time, it must be yielded, as the prerogative of the court, to grant new trials, in cases where the verdicts are not only against the *weight* of evidence, but against the evidence. *Bartholomew* v. *Clark*, 1 *Conn. Rep.* 472. *Johnson* v. *Scribner*, 6 *Conn. Rep.* 185. *Nichols* v. *Alsop*, 6 *Conn. Rep.* 477.

If, in any case, the court is authorized to set aside a verdict and grant a new trial, surely it ought to be done in this, where the note and the numerous writings in relation to it, and the mass of testimony, are against it.

Let there be a new trial.

The other Judges were of the same opinion, except BISSELL, J., who was absent.

New trial to be granted.