### Mathews *vs.* Terwilliger.

Where, upon the making of an agreement for the sale and purchase of land, it is expressly stipulated that interest is to be paid by the purchaser, upon the purchase money, but owing to the fraudulent design of the purchaser, or, to the mistake and inadvertence of the vendor, the written contract omits all mention of interest, the purchaser is not entitled to a specific performance of such contract, but the vendor has a right to have the same reformed, and the mistake corrected.

As a general rule, a mistake of the law is not a ground for reforming a deed founded

Mathews *v.* Terwilliger.

on such mistake. But an exception to this rule occurs where a party is taken by surprise; where he had not sufficient time to act with caution; or where an undue advantage was taken of his situation.

When a court of equity relieves on the ground of surprise, it does so for the reason that the party has been taken unawares; that he has acted without due deliberation, and under confused and sudden impressions.

When a party seeks to obtain the aid of a court of equity in enforcing a specific performance of a contract, a different rule prevails from that which is applied when the other party seeks relief by the rescinding or setting aside of the agreement.

The granting of a specific performance is not a matter of right, but is always a matter of sound and reasonable discretion, which grants or withholds relief according to the circumstances of each particular case.

In exercising this sound discretion, the court will not decree a specific performance in cases of fraud or mistake; or of a hard and unreasonable bargain; or where the decree would produce injustice.

Under this rule, the court will not enforce a contract for the sale of land, which gives a long day for the payment of the purchase money, without making any provision for the payment of interest, and which provides for the execution of a warranty deed to an embarrassed and insolvent purchaser without requiring him to give security for the payment of the purchase money; and where it is manifest that, owing to the suddenness and haste with which the agreement was signed, and to the surprise, inadvertence, and confusion of the vendor, it did not express the intent of the parties, as proved, at the time of its date and execution.

In Equity. This was an appeal, by the plaintiff, from a decree of the late vice chancellor of the seventh circuit, dismissing the plaintiff's bill of complaint. The facts are sufficiently stated in the opinion of the court.

*B. Davis Noxon,* for the appellant.

*Geo. F. Comstock,* for the respondent.

*By the Court,* Gridley, J. The bill in this cause was filed by Mathews, praying for a specific performance by Terwilliger, of the following agreement. "Manlius, Jan'y 13th, 1844. This agreement made this day by Conrad Terwilliger of one part, and Samuel R. Mathews of the other part. The said party of the first part hereby agrees to sell to the said Mathews his farm, on which he now dwells, in Manlius, on lot No. 16 in said town, to contain about 30 acres of land be the same more or less, to be paid for in the following manner, one

hundred dollars on the first day of May next, two hundred dollars on the first of December next, and two hundred dollars a year from that day, until the whole sum is paid, at the rate of $35 per acre. And the said Terwilliger is to give a good warranty deed of said premises, and to give the possession of the said premises when the $100 is paid.

CONRAD TERWILLIGER.

SAMUEL R. MATHEWS."

The defendant, in his answer, set up as his defence that the written agreement did not correctly express the terms of the contract between the parties; and he charged that the true agreement between them required the complainant to pay annual interest on the consideration money for the farm, and such an amount for principal annually, that the annual payment should be $200; *or* if this was not the agreement, (which he averred it to be,) that it was expressly agreed that the complainant was to pay interest on the price of the farm. That the contract was so understood and stated at the time by the complainant, who drafted the *contract himself*; and that a provision for the payment of interest was omitted, by mistake or design. Two witnesses, (J. Van Schaick, and J. R. Van Schaick,) testified that they were present at the inn of one Roberts, when the agreement was executed, and that Mathews wrote the agreement on the counter of the bar and then turned around and read it aloud. The contract, as read, did not provide for interest, and thereupon Terwilliger objected to it on that account, saying that he was to receive $200 a year, and *interest*. To this Mathews replied that he did not understand it so; that he understood that the payment was to be $200 a year including the interest and enough of the principal to make up that sum. That Terwilliger, after some hesitation, asked one Carhart (who is since dead) if that would do; and on Carhart answering that he thought it would, the contract was signed by the parties and delivered to Carhart for safe keeping. This is substantially the relation given by these two witnesses, one of whom states that he was giving particular attention to the conversation, and assigns the reason why he did so. Another

Mathews *v.* Terwilliger.

witness, (Keep,) who was not present at the making of the contract, relates a conversation which took place between the parties, strongly corroborative of the version given of it by the Van Schaicks. He says that not long after the contract was made he heard Terwilliger say to Mathews that he had heard that he (Mathews) did not expect to pay any interest on the place, and that Mathews replied "that he did expect to pay interest on it," and on the remark being repeated he again said "that he did not expect to have the place without paying interest on it."

We are of the opinion that the testimony of the Van Schaicks exhibits the true history of the transaction, notwithstanding some evidence that would seem to give it a somewhat different aspect. The complainant proved the transaction by one Travis, who testified that he was present and saw the contract written; that he heard it read aloud, and heard nothing said by the parties about interest. Now, at best, this is but negative evidence, and would weigh but little against the affirmative testimony of two witnesses who were present at the same time, and who declare that they did hear what the other did not hear, or has forgotten. (*See* 5 *Am. Com. Law* ; 6 *Conn. Rep.* 188.) But Travis, on account of his limited capacity and defective education is not entitled to the same degree of credit with the other witnesses. He was 45 years old when he was examined, and could not read or write. His employment at the tavern where the transaction occurred, was that of a hostler; and it may well be that his attention may have been diverted from the transaction between the parties, by the necessity of attending to the duties of his calling. This is the more probable, inasmuch as he testifies that he was not present when the paper was signed, and asserts with great confidence that it was not signed until after the parties had left the inn. Daniels, another witness, agrees with the relation of the defendant's witnesses, down to the time of the reading of the contract aloud by Mathews. But he left the house immediately afterwards, and heard no part of the conversation. Roberts, another witness, was not present, but was told by Terwilliger, afterwards, that

the contract did not provide for the payment of interest. If he meant, as he doubtless did, the written contract, then his remark was strictly true.

We have said that upon the evidence we are satisfied that by the express agreement of the parties, interest was to be paid upon the purchase price of the farm. Any different agreement would have been very *unusual ;* and in addition to that, there is the positive testimony of two respectable witnesses to the fact, strongly corroborated by that of another; and nothing to rebut it but the negative testimony of the witness Travis.

Now if by the *actual agreement* of the parties, Mathews was to pay interest on the purchase price of the farm, how did it happen that the written contract which should have truly expressed the agreement of the parties, wholly omitted all mention of interest? Was it by the fraudulent design of the complainant; or by the mistake and inadvertence of the defendant? If it was owing to either of these causes, then the complainant is not entitled to have the written contract, on which he has founded his bill, performed ; but the defendant is entitled to have it reformed and the mistake corrected. We think that the defendant is entitled to relief, under the peculiar circumstances of this case, even if the mistake should be deemed to consist solely in an erroneous construction of the agreement.

It is undoubtedly true, as a general rule, that a mistake of the law is not a ground for reforming a deed founded on such mistake. (*Hunt* v. *Rousmanier,* 8 *Wheat.* 212. 1 *Peters' Rep.* 15. See also 6 *John. Ch. Rep.* 169, 170 ; 1 *Id.* 515 ; 2 *Id.* 51, 60.) It is equally true that there are some exceptions to this general rule ; and that one of these exceptions occurs in a case " where the party is taken by surprise ;" where " he had not sufficient time to act with caution ;" and " when an undue advantage was taken of his situation." (1 *Story's Eq. Jurisp.* §§ 116, 119, 120, *note* 1. *Evans* v. *Llewellin,* 2 *Bro. Ch.* 150. 1 *Cox's Rep.* 340, 341. 16 *Ves.* 82.) In the note upon page 135 of Story's Equity, above cited, the learned commentator remarks, " when a court of equity relieves on the ground of *surprise,* it does so on the ground that the party has

been taken *unawares*, that he has *acted without due deliberation*, and *under confused and sudden impressions.*" } This seems to us to be the very case we are considering. Here the parties come out of the hall of the tavern, where it would seem they had been negotiating, into the bar room; and Mathews goes immediately to the counter of the bar, and there writes the contract; which is read over aloud, and on the defendant's alleging that as he understood the agreement he was to receive $200 a year *and* interest, Mathews replied that, as he understood it, the yearly instalment was to be $200 *including interest.* And thereupon, after a moment's hesitation, the contract was signed, and the parties separated. And so great was the suddenness and inadvertence with which the whole transaction was conducted and concluded, that the written memorandum not only omitted to provide for the payment of any interest, but contained no stipulation for securing to the defendant his purchase money, either by bond and mortgage or otherwise. Far different were the facts of the case of *Hunt* v. *Rousmanier*, relied on by the complainant's counsel. There the parties executed the instrument with care, deliberation, and the advice of counsel. And it was precisely such an instrument as was intended to be executed by them; clearly showing that the element of surprise and inadvertence was entirely wanting in that case.

Again; when a party seeks to obtain the aid of a court of equity in enforcing a specific performance of a contract, a different rule prevails from that which is applied when the other party seeks relief by the rescinding or setting aside of the agreement. The granting of a specific performance is not a matter of right, but is always a matter of sound and reasonable discretion, which grants or withholds relief according to the circumstances of each particular case. (2 *Story's Eq. Jur.* § 74, *a.*) In exercising this sound discretion, the court will not decree a specific performance in cases of fraud or mistake, or of a hard and unreasonable bargain, or where the decree would produce injustice.) (*Id.* § 769.) Under this salutary rule we do not think the court should exercise its power to enforce a contract

which gives a long day of payment without making any provision for the payment of interest, and which provides for the execution of a warranty deed to an embarrassed and insolvent man, without any stipulation for a security of the payment; and where it is manifest that, owing to the suddenness and haste with which the agreement was signed, and to the surprise, inadvertence and confusion of one of the parties, it did not express the intent of the parties, as proved, at the time of its date and execution.

The decree of the court below must therefore be affirmed.

SAME TERM.    *Before the same Justices.*