## STEVENSON *a.* BUXTON.

*Supreme Court, First District; General Term, November,* 1861. *Again, Special Term, February,* 1863.

LEGAL REDRESS AND EQUITABLE RELIEF.—DEMAND OF JUDGMENT.—SPECIFIC PERFORMANCE.—DAMAGES.

In an action by a purchaser of land, in which the only relief specifically demanded was that the vendor be compelled to perform the agreement by conveying, it appeared that defendant had never been able to perform his agreement.

*Held,* that the court could not order a reference to ascertain the damages for the breach of the agreement. The defendant has a right to have such question tried by a jury.

---

Although legal redress and equitable relief can be demanded in the same action, and either or both afforded by the court, yet, to entitle a plaintiff to legal redress or equitable relief, he must ask it in his complaint.

The court has no power to direct the specific performance of a contract to convey real estate, where the party has never had the ability to convey.

*November,* 1861.—Appeal from a judgment.

---

The form of the attachment is considered in Seaman *a.* Duryea (11 *N. Y.*, 324); and see People *a.* King (9 *How. Pr.*, 97).

Stevenson a. Buxton.

This action was brought by John Stevenson against John B. Buxton, to compel the specific performance by defendant of his agreement to convey the house and lot No. 152 West Thirty-second-street, New York city. The demand for judgment was as follows:

"Wherefore, the plaintiff demands judgment that the said defendant may be compelled to a specific performance of said agreement, and to deliver to the plaintiff a deed in conformity therewith of the premises therein mentioned, and also to pay the plaintiff the costs of this action; and that the plaintiff may have such other or further, or other and further relief in the premises as may be equitable."

The answer admitted the agreement, but set up that defendant was not, and never had been the owner of the land, or able to perform his agreement. That when he made the agreement, he expected to be able to purchase the land, but had been disappointed in this expectation.

On a trial of the cause, in 1859, at special term, before a justice without a jury, it was found that the defendant had made a contract to convey, but was unable to do so; and the court, holding that it was unnecessary to dismiss the action and turn the plaintiff over to a new suit for damages, ordered a reference to ascertain the damages which the plaintiff had sustained by reason of the refusal of the defendant to comply with his contract, and directed that on the coming in of his report a judgment should be entered that he pay the costs of this action, and specifically perform his contract; and on his failure to do so, that the plaintiff have judgment against him for the amount so reported to be due, with the costs of this action. That decision is reported, 8 *Ante*, 414.

From this judgment the defendant appealed.

*E. W. & G. F. Chester*, for the appellants.

*William R. Stafford*, for the plaintiff.

By the Court.*—Sutherland, J.—This action was brought to compel the specific performance of an agreement to sell and convey to the plaintiff certain real estate in the city of New

* Clerke, Sutherland, and Barnard, JJ.

York.   The specific relief asked is, that the defendant be compelled to deliver to the plaintiff a deed, &c.

The defendant, in his answer, among other things, alleges that he never owned the premises agreed to be conveyed, and that the plaintiff knew that the defendant was not the owner when he accepted the agreement; that the agreement was entered into with the expectation that the defendant would be able to purchase the premises and procure a title, but he had not been able to do so.

On the trial, at special term, it appeared, and was conceded, that the defendant never had title, and was not then, and never had been, able to convey.   Yet, notwithstanding the objection of the defendant, the court made a compulsory reference to a referee to ascertain and report the damages which it was adjudged the plaintiff was entitled to recover for the non-fulfilment of the agreement by the defendant.   The defendant objected, not only to the order of reference, but also to the proceedings before the referee; but the referee proceeded and made his report, upon which judgment was entered against the defendant for $1125.96, and costs.

We think, when it appeared, or was conceded on the trial, that the defendant was not then, and never had been, able specifically to perform, that the justice at special term should have declined to proceed with the trial, and should have sent the action to the circuit for trial.

The defendant had a right to have the question of damages tried by a jury; of which right the justice at special term could not deprive him by a compulsory reference ; particularly as the fact that the defendant had never held title, and was not, and never had been, able to specifically perform, was set up in the answer, and the truth of which may be said to have been an issue in the cause.

The judgment should be reversed, with costs.

----

*February*, 1863.—Trial by the court.

Upon a second trial of the cause, it appeared that the facts set up in the answer were substantially true.   The plaintiff claimed damages for breach of the contract.

Stevenson *a*. Buxton.

*William R. Stafford*, for the plaintiff, cited Wiswall *a*. Mc-Gown (2 *Barb.*, 270); Marquat *a*. Marquat (12 *N. Y.*, 336); Belknap *a*. Sealey (14 *Ib.*, 143); Phillips *a*. Gorham (17 *Ib.*, 270); Emery *a*. Pease (20 *Ib.*, 62); Gardener *a*. Ogden (22 *Ib.*, 27); N. Y. Ice Co. *a*. North Western Ins. Co. (23 *Ib.*, 357; S. C., 12 *Abbotts' Pr.*, 414); Hopkins *a*. Lee (6 *Wheat.*, 109).

*E. W. & G. F. Chester*, for the defendant.—I. The only issue made by the pleadings is as to the ability of the defendant to perform his agreement. The utter inability of the court to afford the remedy asked is manifest. (See Ketchum *a*. Evertson, 13 *Johns.*, 359; Van Epps *a*. The Mayor, &c., of Schenectady, 12 *Ib.*, 436; Fuller *a*. Hubbard, 6 *Cow.*, 13.)

II. The defendant is entitled to a finding in his favor on the only issue, and that the complaint be dismissed, with costs. (Kemshall *a*. Stone, 5 *Johns. Ch.*, 193; Morss *a*. Elmendorff, 11 *Paige*, 277, and cases there cited.) The remark at general term, about sending this case to the circuit, was *obiter dictum*.

CLERKE, J.—It cannot now be doubted that legal redress and equitable relief can be demanded in the same action, and that either, or both, if the circumstances of the case permit, can be afforded by the court. This is fully recognized by the Court of Appeals in the N. Y. Ice Co. *a*. North Western Ins. Co (23 *N. Y.*, 357; S. C., 12 *Abbotts' Pr.*, 414), and in the other cases referred to in the opinion delivered in that case. But it appears to me, in order to entitle a party to legal redress, or to equitable relief, he must ask it in his complaint. Why should a plaintiff be entitled to legal redress in an action stating facts, solely with the view of obtaining equitable relief, and only demanding that species of judgment, any more than he should be entitled to equitable relief in an action in which he claims nothing more than a common-law judgment? In an ordinary action—for instance, to recover the amount of a promissory note —the plaintiff fails to prove the necessary allegations in his complaint, but, nevertheless, shows some circumstances, which, in a different form of action, may entitle him to equitable relief. In such a case, would not the defendant be entitled to a dismissal of the complaint, or would the plaintiff be entitled to equi-

table relief? Justice may require this innovation in the one case as well as the other; but, in my opinion, neither the provisions of the Code, nor the decisions to which I have referred, sanction so complete a revolution in judicial proceedings. It would be entirely inconsistent with that great fundamental privilege of pleading and practice, that, the object of all judicial allegation being to ascertain the subject for decision, the party seeking redress must, in his complaint, state facts entitling him to the redress which he seeks,—not only for the purpose of facilitating the adjudication of the court, but also for the purpose of apprising his adversary of the nature of his claim, and the judgment which he demands, in order that the latter may adequately prepare to sustain his defence. In the N. Y. Ice Co. *a.* North Western Ins. Co. (*supra*), the complaint was framed in a double aspect, praying damages upon the breach of a written contract, and also a re-formation of the contract, if necessary, on the ground of a mistake. In that case, both kinds of redress were properly united ; and the plaintiff was entitled to both, or either, in conformity with his proof.

His prayer for a re-formation of the contract would be addressed to the equitable intervention of the court, and, whether granted or not, he would have a right to a trial by jury, to ascertain his damages for breach of the contract. Of course, if the court refused to re-form the contract in an essential point, his going to a jury would be of no use to him; but still, if he insisted on having the question of damages determined by a jury, he would have a right to have the question submitted to the appropriate branch of the court for that purpose, subject to a dismissal of his complaint if he could not make out his case. But neither party can be constitutionally deprived, in such cases, of a right to a trial by jury on a question of damages.

In the present case, if the complaint was framed with this double aspect, or, in the alternative, asking for damages if specific performance of the contract could not be granted, the court, if it did not grant this specific relief, would send it to the circuit, for a jury to ascertain the damages, should the plaintiff be entitled to any.

No such redress, however, is demanded; the plaintiff rests solely on his hope of specific relief; and it being evidently impossible to grant this to him, his complaint must be dismissed.

But the conduct of the defendant in this transaction was such ·as not to entitle him to costs.

The complaint is dismissed, without costs.*

---

\* The same course was pursued in Lynch *a.* Bischoff, and in Livingston *a.* Painter, decided in the same district, at special term, the former in March, 1862, and the latter in January, 1863.

In Lynch *a.* Bischoff, the rules which prevent specific performance being adjudged in cases of fraud, mistake, surprise, and hardship were reviewed, and it was *Held,* that where there has been mistake in the contract on the part of the defendant, or, for other equitable reasons, the court refuses to compel him to perform specifically, although they may allow the plaintiff to correct the mistake and enter judgment accordingly, yet if he refuses to do so, the action must be dismissed, without prejudice to an action for damages for non-performance of the agreement.

The action was brought by Peter Lynch against Henry Bischoff, to compel him to convey a house and lot upon Elm-street, in the city of New York, pursuant to an agreement.

The premises had been assessed for benefit in the widening of Worth-street, an improvement which, when carried out, greatly increased their value ; and the defence was, that the plaintiff had procured the contract by misrepresentations, and under a mistake of fact on defendant's part, in that plaintiff's agent, in order to induce the defendant to enter into the contract, assured him that the assessment would not be confirmed for years to come. It turned out that the Supreme Court had rendered its decision on the previous day, confirming the report of the commissioners to widen that street ; but the agent of the plaintiff testified that he was ignorant of this fact when the contract was made. The premises in question were assessed $1,200. Defendant claimed that this amount should be paid by the plaintiff, and alleged that he had tendered the plaintiff a deed, on condition that he pay this sum in addition to the $6,000 agreed upon as the price.

*Burrill, Davison & Burrill* for the plaintiff.

*Henry L. Clinton* and *John H. Powers,* for the defendant.

Allen, J.—I am not satisfied that a fraud was practised upon the defendant, by the plaintiff, which would authorize the court to rescind the contract, or defeat an action at law upon it. There was certainly no misrepresentation of any fact by the plaintiff ; and although the statement and representation of the plaintiff's agent were very positive, and turned out to be false in fact, yet they were in the form of an opinion, and were not known by him to be untrue, and it is entirely probable that he did not intend to deceive or mislead ; but it is quite evident that his desire to secure the bargain for his employer, induced the expression of a very confident opinion that the enlargement of Worth-street, by which, it is conceded, the property would be greatly enhanced in value, would not be accomplished for a long time to come, if at all. If his principal had actual knowledge of the confirmation of the proceedings and assessment for that improvement, it might be difficult to shield him from responsibility for the truth of the representations of the agent, notwithstanding they took the form of an opinion as to the happening

of an event in the future, instead of a declaration that the fact had not transpired at the time.

Neither was there a concealment of any fact which the plaintiff was bound to communicate to the defendant. Had he known that the assessment had been confirmed, he was under no obligation to disclose the fact to the defendant, and there was no evidence that he "industriously concealed" the fact from the defendant, by taking any means to keep him in ignorance or prevent inquiry by him.

The industry of the plaintiff was perhaps legitimate ; it was confined to taking measures to secure the property at a price fixed many months prior, before the defendant should learn that the assessment had been actually made. The plaintiff says that he did not know that the assessment had been confirmed, but he also states that he did not know that proceedings for that purpose were pending, and supposed that it would be confirmed ; and one answer is quite significant of his intelligence upon the subject. To the question, "At that time, on the morning of the 28th, when you called at Mr. Henriques' office, had you any idea, whatever, that it was confirmed?" he answers, "Nothing more than it was before the court ; I knew it was before the court ; I owned property, and knew that it was before the court for confirmation." He does not say that he had no idea that it had then been confirmed, clearly implying that he did not know positively that it had been, but supposed it might have been, or was then, confirmed.

It is enough, for all the purposes of this action, that the value of the property would be very much enhanced by the consummation and completion of the proceedings for the widening of Worth-street, which both parties knew was in contemplation ; and the plaintiff knew that proceedings for that purpose were in progress, and near completion, and probably actually completed by the confirmation of the assessment. By the confirmation of the assessment before the contract of sale, the premises were charged with the assessment for benefits, whatever they might be, which, under the covenants against incumbrances provided for in the contract, would be chargeable upon the seller. The assessment in the case was $1,200, and was confirmed the very day before the contract.° The defendant had named the price which he must have "clear," months before the time, and the plaintiff well knew that it was not fixed with reference to the increased value by reason of the improvement of Worth-street, and still less with the expectation of paying from the purchase-money for that improvement. The defendant, if held to his contract, will be compelled to part with his property, greatly enhanced in value by the improvement, of which he was entirely ignorant, and, at the same time, receive a price diminished by the cost and value of that improvement. Both parties, if both were equally honest, valued the property, without the improvement, except as it was in contemplation, at $6,000. It turns out that the improvement had been ordered, and that by it the value was increased, at least, $1,200, making the lot worth $7,200. But, by the contract, the defendant is made to pay this $1,200 ; so that, instead of receiving $6,000 for a lot worth that sum, and no more, he receives $4,800 for a lot worth $7,200, and this because he has made a mistake, or was ignorant of a fact, which, if not known, was pretty clearly guessed at by the plaintiff. It is difficult to believe that the plaintiff made haste, on the morning of the day of the date of the contract, to secure that lot at $6,000, without a very confident expectation, or knowledge, that the $1,200 assessment would fall upon the defendant, and not upon himself. He did not intend to purchase that property incumbered by that assessment, or with the prospect of an immediate incumbrance to that amount, and pay the full price of $6,000 for it.

If he did, it is not too late, as the conveyance has been offered him in those terms. It is equally clear, that defendant did not intend to sell the property for $6,000, and pay an assessment of $1,200 for its improvement by the widening of Worth· street.

It is well settled, that a specific performance of contracts is not a matter of right in either party, but is a matter of discretion in the court, and the circumstances of each particular case will control and determine the rights of the parties. Courts of equity will frequently refuse to enforce a contract which they will not annul. (White *a.* Dammon, 7 *Ves.*, 30 ; Seymour *a.* Delancy, 3 *Cow.*, 445 ; reversing S. C., 6 *Johns. Ch.*, 222 ; Matthews *a.* Terwilliger, 3 *Barb.*, 50 ; Jackson *a.* Ashton, 11 *Pet.*, 229.)

Inadequacy of consideration may be sufficient to induce the court to refuse a decree of specific performance, although it would not rescind the contract. (Osgood *a.* Franklin, 2 *Johns. Ch.*, 1.)

A contract to be enforced specifically must be fair and just in all its parts, and not a hard or unconscionable bargain. (Kimberly *a.* Jennings, 6 *Sim.*, 340.)

There are many instances, in which, though there is nothing that actually amounts to fraud, there is nevertheless a want of that equality and fairness in the contract which are essential, in order that the court may exercise its extraordinary jurisdiction in specific performance. (Mortlock *a.* Buller, 10 *Ves.*, 292, 300, 800 ; Twining *a.* Morrice, 2 *Bro. C. C.*, 326.)

The court will not interfere when there has been an improper suppression of a fact by one party, or where, at the time of entering into it, one party was cogni-- zant of a fact of which the other could not be informed, so that what was certain to the one, was represented as, or was in fact, uncertain to the other. (Shirley *a.* Stratton, 1 *Bro. C. C.*, 440 ; Deane *a.* Rastron, 1 *Ans.*, 64 ; Elland *a.* Lord Llandaff, 1 *Ball & B.*, 241.)

So, too, where a specific performance will impose a great hardship on either of the parties, the court will not decree it, but leave the party seeking it to his action. (Per Lord Brougham in Gould *a.* Kemp, 2 *M. & K.*, 308.) One other rule may be referred to before applying the principles, as far as they have been settled by adjudicating in particular cases, to the case on hand, and that is, that the contract, to be enforced by a court of equity, must be free from surprise and mistake, as well as fraud. (Ball *a.* Storie, 1 *S. & S.*, 210 ; Malins *a.* Freeman, 2 *Keen*, 25 ; Leslie *a.* Thompson, 9 *Har.*, 268 ; and see 2 *Story's Eq. Jur.*, § 742, et seq.)

It would be inequitable to enforce this contract as against the defendant. It would be to compel him to part with his property for an inadequate price, and to enforce an unequal bargain. It would be to compel him to perform a contract to which he never consented, and which, if the plaintiff was as ignorant as the defendant, was not in the minds of the parties. If the plaintiff had reason to believe, and did believe (as the evidence authorizes the inference), that the assessment had been confirmed, then he acted upon the knowledge, or rather belief, of a fact which proved to be true, of which the defendant was entirely ignorant, and of which the plaintiff knew he was entirely ignorant. To enforce the contract, would be to enable the plaintiff to take advantage of this ignorance of a fact, affecting greatly the value of the property, and the terms and conditions of the sale. It cannot be doubted, that, had the defendant been as well informed as the plaintiff, he would have provided by the contract to relieve himself from the payment of the assessment.

It is not a case for a specific performance of the contract as made. If the plaintiff elects to correct the mistake, and accept a conveyance of the property, subject to

the assessment, and as tendered by the defendants, a judgment to that effect may be entered, without costs to either party; but if he omits, for twenty days, to signify his election to take such conveyance and perform the contract, then the complaint must be dismissed, with costs, but without prejudice to an action for damages for non-performance of the contract.

In LIVINGSTON *a.* PAINTER, it appeared that an agreement was made between the holders of the first and second mortgage, respectively, upon leasehold property, that the holder of the first mortgage would waive a default, which gave him the right to foreclose it immediately, in consideration that the holder of the second would foreclose his mortgage immediately, and that if he should buy.at the foreclosure he would pay the sum of $3,000, on account of the first mortgage, within six months. *Held,* that the holder of the first mortgage could not sustain an action against the holder of the second mortgage, and in whose name he was alleged to have bought in the premises at such foreclosure, to compel specific performance of the agreement. Although it is not essential to granting specific relief that the subject of it must be real property, yet it should not be granted in such a case as this; for although the plaintiff hereby would not be permitted, under his agreement, to foreclose his mortgage immediately, if the defendant should tender the $3,000, still, the mortgage being as effectual as ever, and the only injury sustained by him being his delay in prosecuting its foreclosure, his remedy must be by an action for damages.

*Mr. Delafield,* for the plaintiff.

*Mr. Harrington,* for the defendants.

CLERKE, J.—This is an action to obtain the specific performance of an agreement.

The plaintiff alleges an agreement between the assignor of the plaintiff and defendant Painter, who was the owner of a second mortgage of a leasehold (No. 84 Leonard-street), which mortgage was made by one Seabury Lawrence to one John Sniffen and others, to secure the payment of $12,340. The agreement recites that Painter had commenced proceedings to foreclose this mortgage; that Hamilton, the assignor of the plaintiff, was owner of a first mortgage, made by the said Lawrence on the same premises, to secure the payment of ·$12,000, which had become due at the option of Hamilton, according to a provision in the mortgage; but that he had agreed to waive this option, and that Painter in consideration of the sum of one dollar, and of the agreement made by Hamilton, agreed, 1st, to pay within forty-five days the semi-annual interest in arrear on said first mortgage, and all taxes and assessments due upon the premises; 2d, to prosecute the foreclosure of the second mortgage to the earliest possible conclusion; and 3d, in the event of Painter's buying in his own name, or otherwise, at the sale under the said foreclosure, the said leasehold interest subject to the first mortgage, he should reduce the same by payment, on account, of the sum of $3,000, within six months from the date of the agreement.

The complaint alleges that Painter prosecuted the foreclosure of the second mortgage to judgment of foreclosure and sale; that under this judgment the leasehold was sold at public auction; that the same was purchased at the sale by the defendant Boyes for $2,000, and that the sheriff executed a deed thereof to Boyes, subject to the first mortgage.

The complaint further alleges that Painter purchased the leasehold at the said

sale, in the name of Boyes, for the purpose of evading the terms (meaning the obligations) of said agreement, and that Painter is really the owner of the beneficial interest in the said purchase.

On this statement the defendants move to dismiss the complaint, on the ground that it does not present a case for the equitable interposition of the court.

Although, generally, the subject in respect to which the court will give the specific relief sought in this action, is realty, or things relating to the realty of a permanent nature, there are some few instances, affecting personal property, in which, from the peculiar nature of the thing, arising either from an artificial value attached to it from its locality or other circumstances, a specific performance of the agreement would be the only adequate remedy. In other words, in respect to any agreement, the non-fulfilment of which will not admit of pecuniary compensation, the court will afford this relief; although it is chiefly with regard to real property that the substitution of damages by way of redress is generally insufficient. To mention instances supposed by Lord Chancellor Hardwicke, in Buxton *a.* Lister & Cooper (3 *Atk.*, 382), a man may contract for the purchase of a great quantity of timber, as a ship-carpenter, by reason of the vicinity of the timber, and this on the part of the buyer. On the part of the seller, suppose a man wants to clear his land in order to turn it to a particular sort of husbandry. There nothing can answer the justice of the case but the performance of the contract in *specie.* In the case of John, Duke of Buckinghamshire *a.* Ward, a bill was brought for a specific performance of a case relating to alum-works and the trade thereof, which would be greatly damaged if the covenant should not be performed on the part of Ward. The covenants lay there in damages; and yet the court considered, if they did not make such a decree, an action afterwards would not answer the justice of the case, and therefore decreed a specific performance. Lord Hardwicke considered the case before him (Buxton *a.* Lister & Cooper to be something of the like kind. Lister & Cooper had agreed with Buxton for the purchase of several large parcels of wood (merely the timber), standing within the township of Kirby, for the sum of £3,050, to be paid at six several payments, every Lady day, for the six following years, Lister & Cooper to have eight years for disposing of the same; and that articles of agreement should be drawn and perfected as soon as conveniently could be, with all the usual covenants therein to be inserted, concerning the same. Had not the merits of the case been against the plaintiff, Lord Hardwicke intimated that the memorandum appearing not to be a final contract—but to be made complete by subsequent articles—a bill to compel the execution of the subsequent articles would be allowed. The case of Phillips *a.* Berger (2 *Barb.*, 608), to which I have referred, was placed on especially the ground that if the action had been brought by the defendant against the plaintiff, an award of damages would not put him in a situation as beneficial as if the agreements were specifically performed. The contract related to the sale or compromise of a judgment, which Phillips had recovered against John C. and C. B. Morrison, in which a creditor's bill had been filed. During the pendency of that suit, Berger entered into a contract with Phillips, agreeing to compromise the claim for $4,500. The court considered that an action at law would not afford to the defendant a complete and satisfactory remedy, if the plaintiff had refused to assign or release the judgment, according to his contract. They imagine many uses to which the defendant might have put the judgment, which could not be at all, except by vague conjectures, measured or estimated; and if on this account he would have been entitled to a specific performance, then, for the same reasons, the plaintiff would be entitled

to the same remedy. If a bill will lie in favor of one party to a contract, it will, according to the opinion in that case, also lie in favor of the other. The ground then, of the interference of the court was, that the defendant might have applied the judgment to many uses, which could not be measured by damages, and that in order to render complete justice, if the defendant was in the plaintiff's place, the specific assignment of the judgment would be essential—that is, he must have the judgment to control in such a way as his interests may require. The thing itself would be necessary for him. In the case before us, the ownership or control of no specific thing is in question. The plaintiff does not ask for the sale or purchase of a thing, which, from certain circumstances, or for certain purposes, or from the peculiar nature of it, arising from an artificial value attached to it from its locality, or other causes, it is necessary for him to possess. He seeks for nothing but money ; instead of bringing an action at common law for pecuniary compensation, he seeks our equitable interposition for the same purpose. The difference is, that he demands a specific amount, instead of damages, which a jury in a common-law action may award him. In seeking pecuniary compensation, he resorts to the extraordinary, instead of the ordinary, jurisdiction of the court. In Phillips *a.* Berger, the effect of the decree, indeed, was to compel the payment of a specific sum of money from the defendant to the plaintiff ; but the court placed the decision, as we have seen, on the ground that if the defendant had brought the action, the assignment of the judgment would have been compelled—and the court maintained, as the obligation was reciprocal, so should the remedy be. Although I must say I have some misgivings as to this reciprocal right, in relation to an action like this, which is addressed to the discretion of the court, in the present case ; although if the plaintiff, or his assignee, attempted to violate this agreement by commencing an action to foreclose the mortgage, the court would probably enjoin him from doing so, or tender deposit of the $3,000. Still this alone is not sufficient to take the case out of the ordinary course. If the plaintiff has sustained any injury, it is in consequence of the delay in not prosecuting a foreclosure of the first mortgage. The damages caused by the delay are capable of being measured and ascertained by a jury. The fact that the damages may be so trifling as not to warrant the bringing of an action to recover them, so far from being a reason for the extraordinary interposition of a court of equity, is a conclusive reason against it. The mortgage is as effectual as ever ; the non-fulfilment of the agreement has not in any respect impaired it, or interfered, except by delay, with the remedy under it ; and it can at any time be foreclosed, at the option of the plaintiff. In short, if the plaintiff is entitled to any redress under this agreement, that redress is by an action for damages.

The motion to dismiss the complaint is granted, and the complaint dismissed with costs.