## KINNE *against* KINNE and others.

In an appeal from a decree of probate, tried on the issue *devisavit vel non,* a new trial will be granted, where the verdict is manifestly against the weight of evidence, though there was evidence on both sides.

It is not essential to the legal capacity of a testator to make a will, that he should be capable of managing business generally; it being sufficient if in the making of his will, he understands what he is doing.

The question of testamentary capacity relates exclusively to the time when the will was made; and though evidence of the testator's conduct before and after that time is admitted, it is received only to shew his state of mind *at* that time.

Therefore, where evidence was given of the conduct of an aged testator, after the making of his will and while he was gradually sinking; it was held, that such evidence was entitled to but little weight.

The opinions of witnesses as to the capacity of a testator to do business or make a will, are entitled to little or no regard, unless supported by good rea-sons, founded on facts which warrant them.

In deciding upon the question of testamentary capacity, care is to be taken that singularity be not confounded with insanity, and that a weakened intel-lect be not mistaken for one that is lost.

THIS was an appeal from a decree of the court of probate, approving the last will and testament of *Manuel Kinne,* de-ceased.

The will was dated the 13th of *June,* 1827; and the testa-tor died about eighteen months after that time. The reason assigned for the appeal, was, That the devisor was not of sound mind and memory; upon which issue was joined to the jury. On this issue the cause was tried, at *Brooklyn, Oct.* term, 1830, before *Williams,* J. The jury returned a verdict for the ap-pellant; which they were directed, by the judge, to reconsider; and on reconsideration, they still adhered to it. The appellees then moved for a new trial, on the ground that the verdict was

against evidence ; and the motion, stating the evidence in detail, was reserved for the consideration and advice of this Court. For the present purpose, the statement of evidence embraced in the following opinion, is deemed sufficient.

*Goddard*, of counsel for the appellees, declined argument.

*Frost*, contra.

WILLIAMS, J. In support of the will the subscribing witnesses only were called. Two of them had but little opportunity to judge of testator's state of mind, and saw nothing to lead them to doubt his sanity. The other witness was the magistrate who drew the will. By his testimony, it appears, that he had been acquainted with the testator about ten years ; had been previously informed by him, that he should call on the witness to draw his will ; that he came on foot about a mile to the house of the witness, attended by a little boy ; dictated the will from some memorandum containing the names of his children, and what he intended to give them ; that he told the witness, that he had made a will before, by whom it was drawn, and why he changed the provision for his son *Robert*. There is nothing in his conversation, as detailed by this witness, and nothing in the will itself, that would lead any one to suspect insanity, or even imbecility of mind.

The coming in of his wife, and the questions she put as to the effect of a conservator upon the will, are not important, as there was no pretence of any undue influence upon her part, or that she interfered at all respecting it.

On the part of the appellants, a number of witnesses were introduced, most of whom were of opinion, that he was not competent to do business or make a will. The opinions of witnesses on that point, are entitled to little or no regard, unless supported by good reasons, founded on facts which warrant them. If these reasons are frivolous or inconclusive, the opinions of the witnesses are worth nothing. *Harrison* v. *Rowan*, 3 *Wash. C. C. Rep.* 587. Upon the facts stated in support of those opinions, the triers will draw the inference as to the state of the testator's mind. It is apparent from all the testimony, that the deceased was always a singular man, or as some express it, " a strange, odd man." That a man of this character, sometimes obstinate, and sometimes fickle, should, as he ad-

vanced in years, appear more strange, was to be expected ; and the line between sanity and insanity, in such a case, would be less distinctly marked.    It is also to be noticed, that this will was made about eighteen months before his death ; and yet witnesses are not particular as to the time of the incidents they relate.    His notions of dress ; his different opinions at different times, about his children's shoes ; his mode of making hay ; his claim of being able to explain the whole bible ; are facts which would naturally lead to the opinion, which seems to have been universal, that he was a *strange* man, different in many of his notions from others, and also a fickle man ; though to some he appeared a " strong wayed man," or obstinate ; but these circumstances certainly do not prove insanity or incompetency to make a will.

That a number of years before his death, he had some difficulty with his wife, of itself, proves nothing.    Such a difference may have arisen from a misapprehension of facts, from ill temper, or from some of those singularities which distinguished the testator.    Unhappily, such differences are too common to be referred, as a matter of course, to insanity.    In such cases, the heart is often more chargeable than the head.    The charge, which, at a later period, he brought against his wife, of putting the tongs into his bed, to make him uneasy, has a much stronger bearing upon this question.    The circumstances, however, attending it, are not disclosed ; nor is the time given, with any accuracy.    I presume it must have been after he was confined to his bed, and his position became very irksome to him.    The testimony relative to the note, which had been taken up, certainly shews, that he had lost the recollection of that particular transaction. At what time that was, however, does not appear ; nor will a single fact of this kind justify the supposition of an entire loss of memory.    His application to the Rev. Mr. *Fowler* to draw his will, the loss of his *memorandum,* the incoherence of his ideas in consequence, and his declaring that he had left it with Mr. *Fowler,* show, that the course that Mr. *Fowler* took, at that time, was very proper, but by no means prove a loss of reason.    The fact that he had been there before on the business, might very naturally lead him to believe, that he left his *memorandum* there ; and the loss of such a paper would very likely create some confusion in the ideas of a man younger than the testator.    As to his stories being told very often, this has been common from the first history of the

aged ; and that they should be sometimes more and sometimes less embellished, is no new event. The condition of this man is well described by his physicians, and, I think, is a fair summary of the whole testimony. "For two or three years before his death," says Dr. *Burgess,* " he failed in mind, as well as body ; he was not as competent as he once was." This was his condition before he was confined to his bed ; and this has been the general history of all who have been permitted to number as many years as *Manuel Kinne.* Perception blunted, judgment weakened, and less competency for business ; such are the usual attendants of old age.

The events which have been mentioned, as occurring after he was confined to his bed, his unkind remarks about his wife, his animosity to others, his incoherent remarks—having all occurred after the will was made and while he was gradually sinking, are entitled to but little weight, and are not evidence at all, except to show his state of mind when the will was made. For the sole question is, what was his state of mind at *that* time ? Had he *then* an understanding of the nature of the business he engaged in ; a recollection of the property he meant to dispose of, and of the persons to whom he meant to convey it, and the manner in which he meant to distribute it between them ? " His capacity," says Judge *Washington,* " may be perfect to dispose of his property by will, and yet very inadequate to the management of other business, as to make contracts for the purchase or sale of property." *Harrison* v. *Rowan,* 3 *Wash. C. C. Rep.* 586. I think the mistake in this case has arisen from the fact, that as the testator was not in a condition which would justify his transacting all kinds of business, it has been supposed, he could not do this. But says the same venerable authority : " It is not necessary that he should view his will with the eye of a lawyer, and comprehend its provisions, in their legal form. It is sufficient, if he has such a mind and memory as will enable him to understand the elements of which it is composed,—the disposition of his property in its simple forms." *Harrison* v. *Rowan,* 3 *Wash. C. C. Rep.* 585. There being no evidence of permanent derangement or mental imbecility before he made his will, we have only to enquire what was his state of mind *at* that time ; and unless the magistrate who drew the will was grossly deceived, or has attempted to deceive the court, neither of which we have any reason to suspect, the testator did understand what he was do-

ing, and the reasons for varying the former disposition of his estate. There being no evidence directly opposed to the testimony of the subscribing witnesses, or impairing it, except in a very remote degree, I must think, that the verdict was wrong.

It is said, that the jury are the proper judges of testimony and its weight ; and that a new trial will not be granted, where there is evidence on both sides. The first of these objections would prove, that a new trial could never be granted for a verdict against evidence ; and as to the last, the rule is settled, that a new trial may be granted where the verdict is manifestly against the weight of evidence. *Hammond* v. *Wadhams,* 5 *Mass. Rep.* 353. *Johnson* v. *Scribner,* 6 *Conn. Rep.* 185. 189. That this is a case of that kind, I cannot doubt. Questions of this kind, as well as all other questions arising upon appeals from probate, have, until lately, been exclusively within the jurisdiction of the court ; and some uniformity of decision has been preserved. And although it is no cause of regret, that the legislature have now authorised the aid of a jury in these questions ; yet it still remains the duty of the court to endeavour to preserve something like uniformity of decision ; and to take care (where there is no known standard) that singularity be not confounded with insanity, and that a weakened intellect be not mistaken for one that is lost. Our law has kindly allowed our citizens to select the objects of their bounty, among whom to distribute the fruits of their labour, when they can themselves no longer enjoy them. This is an indulgence dictated by benevolence. Dispositions of property, made in this way, are not unnecessarily to be disturbed. Courts have rather sought to establish them.

Believing that there is, in this case, no proof of the incapacity of *Manuel Kinne* thus to dispose of his estate, at the time he attempted it, I think there must be a new trial.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial to be granted.