## STATE OF CONNECTICUT *vs.* JOHN F. SMITH.

A testator made the following bequests:—"I give to my wife *S* one half of all my estate, both real and personal, to have and to hold the same to her own proper use and benefit forever. And furthermore I give to my wife *S* the remaining half of my estate, both real and personal, with the right to sell, dispose of, convey, and use the same without any restrictions whatever during her natural life; and at her decease one half of what remains of my estate I give to my brother *W* and to my sisters *P* and *N*, to be divided between them equally." Held that *S* had an absolute power to dispose of the second half of the estate during her life, and that a conveyance made by her carried a good title in fee,

State of Connecticut *v.* Smith.

And held that she could dispose of the property by gift, if she chose, as well as in any other mode.

The testator appointed *S* his executrix. More than a year after the time limited for filing an inventory in the probate court she conveyed away all the property and a year later died, having filed no inventory, nor done any thing in the settlement of the estate beyond proving the will and giving a probate bond, and afterwards paying all the debts. An administrator *de bonis non* with the will annexed was appointed on the husband's estate, for whose benefit a suit was brought in the name of the state on the bond. Held that, there remaining no property to which the administrator had a rightful claim, and there being no debts to be paid, the administrator had no such interest as made the suit sustainable for his benefit, for the technical breach of the bond in the neglect to file an inventory and render an account of administration.

[Argued March 5th—decided March 13th, 1885.]

ACTION on a probate bond; brought to the Superior Court in Hartford County, the suit being brought at the request and for the benefit of the Security Company, a corporation, administrator *de bonis non* with the will annexed on the estate of Reed Anderson, deceased. The case was tried to the court before *Beardsley, J.*

The parts of the will important to the case are as follows :—

"I give and bequeath unto my beloved wife Sophia one half of all my estate, both real and personal, to have and to hold the same to her, and to her own proper use and benefit forever.

"And, furthermore, I give and bequeath to my wife Sophia the remaining half of my estate, both personal and real, with the right to sell, dispose of, convey, and use the same, without any restrictions whatever, during her natural life; and, at her decease, one half of what remains of my estate I give and bequeath to my brother Willis Anderson, and to my sister Polly Cone, and my sister Nancy Hungerford, to be divided between them equally.

"I do nominate and appoint my beloved wife Sophia to be sole executrix of this my last will and testament."

The complaint alleged that Reed Anderson, the testator, died April 29th, 1878, leaving the above will; that Sophia Anderson, his widow, had the will proved and executed a probate bond with the defendant as surety for her faithful

discharge of the duties of executrix; that she did not within two months thereafter file any inventory of the estate, nor ever at any time afterwards; that the testator left real and personal estate of the value of over five thousand dollars; that the said Sophia died intestate October 14th, 1880; and that the Security Company on the 29th of March, 1884, was duly appointed administrator *de bonis non* with the will annexed on the estate of said Reed Anderson, and accepted and now held said trust. The complaint then proceeded as follows:

The said Sophia Anderson neglected to perform each and every of her duties as executrix aforesaid, except proving the will of said testator and executing and lodging said bond. She rendered no account of her trust to said probate court, and conveyed away, converted to her own use, and disposed of the entire estate of said testator, so that the present administrator has been and is now unable to get possession of the same, or any part thereof, though the time limited for the settlement of said estate elapsed a long time before the decease of the said Sophia. This action is brought by the consent of said court for the special benefit of said Security Company, administrator *de bonis non* with the will annexed of the estate of said Reed Anderson, deceased, and said company, as such administrator, is interested in said action, and bound by reason of having accepted the appointment aforesaid and the trust thereof, and has expended its moneys in the payment of probate, appraiser's and attorney's fees in the necessary proceedings upon said estate and the management of said trust; and the neglect of said Sophia Anderson as executrix to file an inventory has prevented said Security Company from an actual knowledge of the estate belonging to said Reed Anderson at the time of his decease, and also from taking possession and control of said estate, and thereby having the means to pay the expenses of executing its trust, and from making a distribution of said estate among those entitled thereto.

The defense set up was that one half the property by the will belonged to the widow, and an absolute right to dis-

pose of the other half, and that she had disposed of the
latter; and that therefore there was no property which the
Security Company had a right to take into its possession
as administrator *de bonis non*, and that the Security Com-
pany had been appointed such administrator with full knowl-
edge of all the facts.

The court found all the allegations of the complaint to be
true and made the following further finding of facts :—The
said Reed and Sophia Anderson never had any issue, but
each had sisters and brothers living at the time of their
deaths.   These sisters and brothers named by the testator
in his will were his nearest kin.   In 1879, more than a
year after the time limited by law for filing an inventory,
the said Sophia Anderson conveyed by warranty deed the
homestead that had belonged to the testator, of the value at
least of $2,000, to Walter M. Smith, without consideration
and as a gift, and subsquently she delivered to him a note
of $1,200 that had belonged to the testator, and about $2,600
of money on deposit in a savings bank.   She paid all claims
against the estate.   The last mentioned delivery of money
was made upon the express understanding that the said
Smith should support her during her life.

Upon the trial the defendant offered in evidence a copy of
the will of Reed Anderson for the purpose of showing that
the Security Company had, as administrator *de bonis non*
with the will annexed, no special interest in this action on
the bond, because by the terms of the will Sophia Anderson
had a fee in the entire estate of the testator, or, if not a fee,
at least a life estate with the right to sell, convey and dis-
pose of the same by gift or otherwise as she pleased, and that
having disposed of the entire estate the Security Company
as such administrator had no interest in the bond or action.
The plaintiff objected to the admission of the will on the
ground that it was immaterial what disposition the testator
had made of his estate; that it was still the duty of the ex-
ecutrix to file an inventory within the time by law required;
and having admittedly neglected to file any inventory during
her life, the plaintiff was entitled to recover the full penalty

of the bond for the benefit of the Security Company as such administrator. The court overruled the objection, and admitted the will in evidence.

The plaintiff further claimed that there had been a breach of the bond, and that the disposition by the testator of his estate was immaterial and collateral to the issue involved; that Sophia Anderson only took, by the devise in the second paragraph of the will, a life estate in one half the property, with such rights over it as belonged to a life tenant only; and that, if she had a life estate in the same, with a right to sell, convey, and dispose of it, she had no right to dispose of it or any part of it by gift. The court overruled these claims, and held that Sophia Anderson took a fee in the whole estate with all the rights of tenant in fee simple.

The court rendered judgment for the defendant and the plaintiff appealed to this court.

*G. G. Sill*, for the appellant.

*J. B. Foster* and *C. E. Perkins*, for the appellee.

PARK, C. J. Reed Anderson disposed of one half of all his property by will in fee to his wife, and then in the same will made disposition of the other half to her as follows: " And furthermore I give and bequeath to my wife Sophia the remaining half of my estate, both real and personal, with the right to sell, dispose of, convey and use the same without any restrictions whatever during her natural life; and at her decease, one half of what remains of my estate I give and bequeath to my brother Willis Anderson, to my sister Polly Cone, and to my sister Nancy Hungerford, to be equally divided between them."

Whether this part of the will carries the fee of the property, or a life estate merely, is the principal question in the case. This question depends upon another, and that is, whether the expression " during her natural life " was used to describe the estate given, or merely the time during which she may "sell, dispose of, convey and use " the prop-

erty " without any restrictions whatever." It seems clear
to us that the language was used in the latter sense.

It was well settled in *McKenzie's Appeal from Probate*,
41 Conn., 607, that a general devise, coupled with a power
of sale or disposal, passes a fee of the property, even if there
be a devise of the remainder, and especially so when the
remainder is described as *what remains*. Many other cases
might be cited, but our own decision is sufficient.

But the plaintiff claims that this case does not come
within the principle of these cases, for the reason that here is
a devise of an express life-estate, and the right given " to sell,
dispose of, convey, and use the same without any restrictions
whatever," is a right to so dispose of the life-estate only.
Such a construction deprives the " right to sell " of all mean-
ing, and renders the clause entirely superfluous; a result to
be avoided in all cases if it can be done, and especially so
in wills, where a cardinal rule prevails that every clause
shall have an operative meaning given to it if possible.

This same claim was made in *Lewis* v. *Palmer*, 46 Conn.,
454. The court disposes of it as follows: " Conceding that
the second clause of the will in question was intended to
vest in Sarah Palmer a life-estate only, the case falls within
the rule, unless the expression 'for her to dispose of as she
may think proper, right or just,' refers to the use, and not to
the estate itself. If that is the true meaning of the will then
the words quoted are without force, for the power to dispose
of the life use existed without them. The rule requiring us
to give effect if possible, consistently with the rules of law,
to all the language of the will, will attach a meaning to the
phrase quoted, and, if we give it any meaning at all, we must
regard it as meaning the estate and not the mere use."
But in this case the language used can have no other proper
construction. The words " the same " must refer to the
property in the remaining half of the estate. When these
words were used the testator had said nothing about any
life-estate; he had said, merely, I give and bequeath the
remaining half of my estate to my wife, with the right to
sell and dispose of the same. It seems too clear for contro-

versy that these words cannot refer to anything else than the property in the remaining half of the estate.

This construction of the right to dispose of the property removes all obscurity from the words "during her natural life," and gives them a natural and well defined meaning. The right to dispose of the property is given to be exercised during her natural life, and not afterwards. She can do as she pleases with the property while she lives, but she shall not dispose of it by will, for that will take effect after her death, and the testator meant, if anything should remain of this part of his estate at the death of his wife, that it should go to his brother and sisters. It is true that the devise of the remainder is not clearly expressed. Literally the clause, "one half of what remains of my estate," applies to the whole estate, but such construction would leave one half of the remainder intestate, which is a result to be avoided if possible. Redfield (on Wills, Vol 2, page 116,) says:—"The courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them."

And besides, the first half of the estate described in the will is given absolutely to the wife, and the last half is given wholly by itself, the bequest commencing with the words "and furthermore," which mean something in addition to what has been already given, and not something to be subtracted therefrom, which might be the case if the clause applied to the whole estate.

But it seems to be conceded by the plaintiff that the words, "what remains," apply only to the last half of the estate, and the clause should be understood as though it read, "what remains of this half of my estate;" still he claims that the words create an absolute remainder in the half, and should not be construed in the sense of what may remain. He insists that here lies the distinction between this case and *McKenzie's Appeal from Probate, supra.* But is there any substantial distinction? These words follow the gift of unlimited power to the wife " to sell, dispose of,

convey, and use the property without any restrictions what-
ever." She could sell the entire property at any time and
put the proceeds in her pocket. How then could there be
an absolute remainder, or any remainder, unless she was
disposed to leave it? It was wholly at her option whether
there should be any or not. Such being the case the words,
" what remains," can have no other construction than *what
may remain*, because the will leaves it all uncertain whether
there would be any remainder or not.

The plaintiff relies much upon the word " use," in the
clause quoted, to show that the wife took only a life-estate
in the second half of the property, and he construes it to
mean merely using the property for income and enjoyment;
whereas the word is used in connection with the words
" without any restrictions whatever." This is a very strong
expression. She may use the property in any manner she
may be disposed. She may sell it and dispose of the pro-
ceeds as she will. This word, in its connection, has as ex-
tensive meaning as either of the other words used, and
signifies entire dominion over the property during her life.

It follows, therefore, that the wife of the testator had an
absolute estate in all the property, with the exception that
she could not dispose of the last half of it by will. But
this limitation is of no importance in this case, for it must
be conceded that she conveyed an absolute title to the
property by the deed she gave to the grantee, and by the
disposition she made of the personal estate. It can make
no difference that a part of the property was disposed of by
gift. She had a right to dispose of it in any manner that
she chose. If she had the right to sell or otherwise dispose
of the entire property, she had the right to convey an
absolute title. This is too clear to be questioned.

It appears in the case that she did so convey the entire
estate, and when the Security Company was appointed ad-
ministrator *de bonis non*, there was no estate whatever to
be administered. All the debts had been paid, and no per-
son had any property interest therein.

It is alleged in the complaint that the suit is brought for

the special benefit of the Security Company as administrator on the estate, and inasmuch as an inventory of the estate was never made by Sophia Reed, nor any account of administration rendered, the claim is that a recovery should be had in damages equal in amount to the value of all the property of the estate at the time she neglected to file an inventory. If such recovery should be had, what could the Security Company do with the proceeds except to pay them back to the defendant, after deducting therefrom the expenses of this suit? It is manifest they could keep nothing but the cost, for any purpose whatever, and can the company make cost merely for the purpose of making the defendant pay it? This certainly would be a work of folly, and besides would be using the court for purposes of oppression and wrong. We think it cannot be done.

A suit on a bond of this character, must be instituted and prosecuted for the benefit of some person who has a property interest in the estate itself, which the Security Company cannot claim.

We think, therefore, that the evidence objected to was admissible, and there is no error in the judgment appealed from.

In this opinion the other judges concurred.