GEORGE H. WILSON, Admr.

*v.*

JOHN T. TURNER *et al.* Exrs.

*Filed at Springfield November 10, 1896—Rehearing denied January 14, 1897.*

1. ASSUMPSIT—*lies for money which, in justice and right, should be returned.* Assumpsit for money had and received will always lie whenever one person has received money which belongs to another, and which, in justice and right, should be returned.

2. WILLS—*gift over of property bequeathed absolutely is void.* Where personal property is bequeathed to the testator's widow absolutely, with full power of disposition during her life, a subsequent clause in the will giving over to others the amount of such bequest remaining undisposed of at her death is void. (*Bergan* v. *Cahill*, 55 Ill. 160, and *Glover* v. *Condell*, 163 id. 566, distinguished.)

3. SAME—*a condition inconsistent with estate to which it is annexed is void.* A devise of the rents and profits of an estate to the testator's widow for life, without restriction, vests in her the absolute title to such rents and profits, with full power of disposition during life, and a subsequent limitation over which attempts to restrict her absolute property therein is void.

*Turner* v. *Wilson*, 55 Ill. App. 543, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. OSCAR P. BONNEY, Judge, presiding.

Henry Kent died testate in Adams county on the 13th of August, 1878. The provisions of his will material to be considered in the disposition of this case are as follows:

"*Fourth*—After the payment of my said debts and funeral expenses I give, devise and bequeath unto my wife, Nancy C. Kent, one-half of all the personal property, money and effects, not hereinbefore otherwise disposed of, which I may own or have a right to at the time of my death. And I also give, devise and bequeath to my said wife the farm upon which we, my wife and myself, now reside, for and during the term of her natural life, she to have all the rents, issues and profits growing out of or

arising from the same, from the time of my death, for and during her natural life, whether such rents, issues and profits arise from a lease now made or which may hereafter be made by me of said farm.

"*Fifth*—It is my will that the remainder of the personal property, rights and effects of which I may die possessed, not hereinbefore disposed of, be sold by my executors as soon as the same can conveniently be done after my death, in the manner and upon the terms hereinafter specified; and I hereby give, devise and bequeath the proceeds of such sale, after the proper expenses thereof are paid, to my nephews and nieces.

"*Sixth*—It is my will that all the real estate of which I may die seized, as soon as can conveniently be done after the death of my said wife, be sold by my executors as hereinafter they are directed; and I hereby authorize and empower my said wife, after the expenses necessarily incurred in said sale are paid, to dispose of one-half of the proceeds of said sale, by will, as to her may seem best. The remaining half of said proceeds of said sale I give, devise and bequeath to my said nephews and nieces.

"*Seventh*—In case my said wife shall not make disposition of half of said proceeds of said sale of said real estate as it is herein above provided that she may do, then it is my will that said proceeds of said sale so left undisposed of, together with all the personal property hereby given my said wife absolutely which at her death shall remain undisposed of, and also all the rents, issues and profits of the property hereby bequeathed to her undisposed of at the time of her death, pass to and be divided between the nephews and nieces of my said wife, namely:   *   *   *

"And I hereby constitute John T. Turner and Parden B. Grover, both of said county, executors of this my last will and testament, hereby revoking and annulling all former wills by me made, and ratifying, publishing and

confirming this, and none others, to be my last will and testament.

"And I hereby authorize, empower and direct my said executors, as soon as can conveniently be done after my death, to sell all the personal property owned by me at the time of my death, not hereinbefore specially bequeathed to my said wife, and the said Edward K. Bodurtha and Henry Bodurtha, such sale to be made in the manner and after such advertisement as may seem to my said executors proper and advantageous for the interests of my said estate, and to make distribution of the proceeds of such sale as hereinbefore provided.

"And I further authorize and direct my said executors, upon the death of my wife, in case she shall survive me, or as soon thereafter as is practicable, to sell the real estate of which I may die seized, at public auction, upon the homestead where I now reside, first giving such notice of such sale by advertisement, in such manner and for such time as my said executors, in the exercise of their best judgment, shall deem best calculated to secure the most advantageous sale of my said real estate, said real estate to be offered in such parcels as shall to my said executors seem best for the interests of all concerned, the payment or payments for said real estate so sold to be made as follows, to-wit: One-fourth of the purchase money to be paid cash in hand, and the remaining three-fourths to be paid in three equal installments, in one, two and three years, respectively, from the day of such sale, such deferred payments to be secured upon the real estate so sold; and when said sale is made, to first pay out of the proceeds thereof all the proper and necessary expenses of said sale, and then to distribute one-half of the remainder of said proceeds to my said nephews and nieces, as hereinbefore provided; and in case my said wife shall not have disposed of the remainder of said proceeds, together with the personal property, rights and effects of which she shall become possessed hereby, and the in-

crease, rents, issues and profits of property hereby be-
queathed to her, by will, then it is my will that the same
be divided and distributed between the nephews and
nieces of my said wife hereinbefore named, as indicated
by the provisions of this will, by my said executors."

Turner and Grover duly qualified as executors of the
will. They also, from the time of Kent's death, which oc-
curred August 13, 1878, acted as the agents of his widow,
Nancy C. Kent. They ceased to be such agents some time
in the year 1891, when Frederick J. White became their
successor in such agency. In settling the estate they
turned over all moneys coming to Mrs. Kent under the
will, to themselves, as her agents. On September 2, 1879,
they turned over to themselves, as such agents, $153.40,
being a part of her widow's award. They also, with Mrs.
Kent's consent, sold the whole of the personal property,
and turned over to themselves, as her agents, one-half of
the proceeds of said sale, as follows: First the sum of
$120, and then the sum of $1277.27½, making in all the
sum of $1550.67½. During their agency they also rented
for Mrs. Kent the farm in which she had a life estate, for
$1000 a year. Mrs. Kent did not use the whole of the pro-
ceeds of this rent, and whatever sum was not expended
by her they retained, as her agents. In 1891, when White
succeeded them as agent of Mrs. Kent, they had in their
possession moneys belonging to Mrs. Kent amounting to
$4208.38, which they paid to White. White acted as her
agent until the time of her death, renting the farm for
the same rent of $1000 a year. At the time of her death,
which occurred May 6, 1893, he had in his hands, as her
agent, the sum of $3573.12. This sum he paid to Grover
after Mrs. Kent's death, the latter receiving it in his ca-
pacity as executor of Henry Kent, deceased. George H.
Wilson was appointed administrator of the estate of Mrs.
Kent, and brought this action of assumpsit against Tur-
ner and Grover, as executors of the estate of Henry Kent,
to recover the moneys paid Grover by White. On a trial

of the cause in the circuit court, a jury having been waived, the court rendered judgment in favor of Wilson, the administrator, for $1430.67½. This judgment, on appeal to the Appellate Court, was reversed.

GEORGE H. WILSON, *pro se,* and GOVERT & PAPE, for appellant:

Where there remains nothing for a trustee to do but to pay over the amount to his *cestui que trust,* an action for money had and received may be maintained against him. Perry on Trusts, sec. 843, and authorities cited.

A limitation over of either real or personal property after an absolute gift to the first taker is repugnant to the first gift, and void. 2 Jarman on Wills, (5th Am. ed.) p. 529, note 19,.and cases cited; 2 Williams on Executors, (6th Am. ed.) 1376, and cases cited; 2 Redfield on Wills, (ed. of 1886) chap. 14, sec. 65; 1 id. p. 680; 2 Kent's Com. 352; 4 id. 270; *Wolfer* v. *Hemmer,* 144 Ill. 554; *Hamlin* v. *Express Co.* 107 id. 443; *Welsch* v. *Bank,* 94 id. 203; *Waldo* v. *Cummings,* 45 id. 421; *Fairman* v. *Beal,* 14 id. 244.

A condition which is inconsistent with the estate to which it is attached is void, and the estate devised or bequeathed passes absolutely. 2 Woerner on Administration, 954; 2 Jarman on Wills, (5th Am. ed.) 527; 2 Redfield on Wills, (ed. of 1866) 665.

Upon an absolute gift or grant of property the donor cannot, by restrictions or limitations, defeat or annul the legal consequences which the law annexes to the estate. *Steib* v. *Whitehead,* 111 Ill. 251.

J. F. CARROTT, for appellees:

In order to sustain an action for money had and received there must be privity between the plaintiff and the defendant. The law raises no implied promise upon which an action can be maintained, in respect of money had and received, from the mere fact of one man's money having come into the possession of another. *Clarke* v.

*Shee,* Cowp. 197; *Douglass* v. *Skinner,* 44 Conn. 338; *Neill* v. *Chessen,* 15 Ill. App. 266; 1 Wheaton's Selwyn, 104; *Libby* v. *Robinson,* 9 Atl. Rep. 24.

Where, in one part of a will, there is given an estate of inheritance or an absolute interest in personalty, and in subsequent passages the legatee clearly is to take a less estate, the gift is restricted accordingly. *Bergan* v. *Cahill,* 55 Ill. 160; *Sheets' Estate,* 52 Pa. St. 263; *Johnson* v. *Johnson,* 98 Ill. 564.

A devise of the rents, income and profits of land is equivalent to a devise of the land itself. *Zimmer* v. *Sennott,* 134 Ill. 505.

The will in question gave the rents, issues and profits growing out of or arising from the farm to Nancy C. Kent "for and during her natural life." See clauses 4 and 7 of the will.

Mr. JUSTICE CRAIG delivered the opinion of the court:

An action for money had and received will lie whenever one person has received money which, in justice, belongs to another, and which, in justice and right, should be returned. In *Allen* v. *Stenger,* 74 Ill. 119, in discussing this question, the court said (p. 121): "Assumpsit always lies to recover money due on simple contract. And this kind of equitable action to recover back money which ought not, in justice, to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, *ex equo et bono,* the defendant ought to refund. (Chitty on Contracts, 474.) When, therefore, according to this rule, one person obtains the money of another which it is inequitable or unjust for him to retain, the person entitled to it may maintain an action for money had and received for its recovery. And it is not necessary that there should be an express promise, as the law implies a promise. The scope of the action has been enlarged until it embraces a great variety of cases, the usual test being, does the money, in justice, belong to

the plaintiff, and has the defendant received the money, and should he, in justice and right, return it to the plaintiff."

Under the rule announced, if the money paid over to Turner and Grover, as executors of the estate of Henry Kent, deceased, belonged to the estate of Nancy C. Kent, deceased, they had no right to hold the money, and no good reason is perceived why the equitable action for money had and received was not an appropriate remedy. Whether the money, when so turned over, belonged to the estate of Nancy C. or to the estate of Henry Kent, deceased, depends upon the construction to be placed upon the will of Henry Kent. It will be observed that the money in question, with the exception of $153.40, which was a part of Mrs. Kent's specific allowance, consisted of money received from a sale of one-half of the personal property of Henry Kent, deceased, and from the rent of the farm in which Mrs. Kent had an estate for life. As the rent and the personal property do not rest entirely upon the same principle, we will consider them separately.

Clause 4 of the will declares: "I give, devise and bequeath unto my wife, Nancy C. Kent, one-half of all the personal property, money and effects, not hereinbefore otherwise disposed of, which I may own or have a right to at the time of my death. And I also give, devise and bequeath to my said wife the farm upon which we, my wife and myself, now reside, for and during the term of her natural life, she to have all the rents, issues and profits growing out of or arising from the same, from the time of my death, for and during her natural life, whether such rents, issues and profits arise from a lease now made or which may hereafter be made by me of said farm." By the sixth clause the testator directed the sale of his real estate after the death of his wife, and also empowered her to dispose of one-half of the proceeds of the sale by will. Clause 7 of the will declares: "In case

my said wife shall not make disposition of half of said proceeds of said sale of said real estate as it is herein above provided that she may do, then it is my will that said proceeds of said sale so left undisposed of, together with all the personal property hereby given my said wife absolutely which at her death shall remain undisposed of, and also all the rents, issues and profits of the property hereby bequeathed to her undisposed of at the time of her death, pass to and be divided between the nephews and nieces of my said wife, namely:" The last clause of the will directs the executors to divide the remainder of the personal property which shall not have been disposed of by Nancy C. Kent among her nephews and nieces.

The language of the fourth clause of the will is plain and unambiguous, and there can be no question or doubt in regard to the fact that one-half of the personal property owned by the testator was willed absolutely to Nancy C. Kent. The clause contains no condition, reservation or restriction, but in absolute terms the property is devised. More explicit language could not have been selected by the testator to manifest an intention to confer upon and vest the wife with an absolute ownership of the personal property named in the fourth clause of the will. That the testator intended to make an absolute gift to his wife is confirmed by language found in the seventh clause, as follows: "Together with all the personal property hereby given my said wife *absolutely.*" The testator not only made an absolute gift, but in a subsequent part of the will declared that the gift was absolute. The gift being absolute, did the condition named in the seventh clause, that the property undisposed of should be divided among the nephews and nieces, have any effect upon it?

In a case of this character we think the law is well settled that the gift over is void. In 2 Williams on Executors (7th Am. ed. p. 1267) the rule is stated as follows: "Another instance of a repugnant, and therefore void, condition may be found in the doctrine that if there is an

absolute bequest of property, with a proviso that if the legatee dies without having disposed of it by will or otherwise his interest in it shall cease and it shall go over to another, the gift over is void and the legacy absolute." The rule is the same in regard to both real and personal property. If either is given absolutely, the limitation over is void. In 2 Jarman on Wills (5th Am. ed. p. 529, note 19,) it is said: "And, in general, a gift over by remainder or otherwise, after an absolute legacy or a devise in fee, of whatever may remain if the first legatee or devisee die without having disposed of it, is repugnant to the nature of the estate or interest first given, and void." The same rule is laid down in Massachusetts. (*Ide* v. *Ide,* 5 Mass. 499; *Gifford* v. *Choate,* 100 id. 346.) To the same effect is *Jackson* v. *Robins,* 16 Johns. 587, where the court said: "And we may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of reversion. This distinction is carefully marked and settled in the cases." (See, also, *Horn* v. *Campbell,* 100 N. Y. 287.) To the same effect are cases in Maine. (*Jones* v. *Bacon,* 68 Me. 34; *Pickering* v. *Langden,* 22 id. 413; *Remsell* v. *Remsell,* 21 id. 288.) The same rule has been declared in Iowa. Thus, in *Rona* v. *Meyer,* 47 Iowa, 610, the court says: "It is fully settled by authority that if the first taker has the power, by the terms of the will, to dispose of the property, he must be considered the absolute owner, and any limitation over is void for repugnancy." (See *In re Will of Burbank,* 69 Iowa, 378.) In *McKenzie's Appeal,* 41 Conn. 607, where a testator gave his widow certain real estate, and provided that if any

remained at her death the same to be divided equally
among his children then living, the court held that an
absolute power of disposal was given to the widow and
that the gift over was void.   See, also, *Smith* v. *State*, 52
Conn. 562.

In *Wolfer* v. *Hemmer*, 144 Ill. 554, in the discussion of
this question, it was, among other things, said (p. 560):
"It is clear, then, that the fee being devised to the wife
by the express terms of the first clause, a devise over, as
is claimed by the second, could only take place as an
executory devise.   But as is said in Redfield on Wills,
(vol. 2, p. 277):   'It is a settled rule of American as well
as English law, that when the first devisee has the abso-
lute right to dispose of the property in his own unlimited
discretion, and not a mere power of appointment among
certain specified persons or classes, an estate over is
void, as being inconsistent with the first gift.'"   After
reciting the same rule as established in Kent's Commen-
taries, the court said:   "Numerous decisions might be
cited approving and following this rule, and our atten-
tion has been called to none to the contrary.   It has been
expressly recognized by the court in *Fairman* v. *Beal*, 14
Ill. 244; *Welsch* v. *Belleville Savings Bank*, 94 id. 191; *Hamlin*
v. *United States Express Co.* 107 id. 443.   More comprehen-
sive language to confer an unlimited discretionary power
of disposition could not be commanded than was used by
the testator in the second clause of this will.   The wife
is given 'full power to sell, mortgage, exchange, invest
and re-invest the same in the same manner I (the testa-
tor) might do if living, and to distribute the same, by gift
or otherwise, among my children at any time during her
life, as to her shall seem meet and proper, and to appoint
the same among my children by will after her decease,
according to her own judgment and discretion.'   The
devise over would, therefore, under the foregoing au-
thorities, be void, however clearly expressed."

In *Hamlin* v. *United States Express Co.* 107 Ill. 443, the court said (p. 448): "The doctrine relied upon by counsel for plaintiffs in error, that where there is a devise of an unlimited power of disposition of an estate in such manner as the devisee may think fit, a limitation over is inoperative and void by reason of its repugnance to the principal devise, is not controverted by counsel for defendant in error, and is undoubtedly well established."

In *Welsch* v. *Belleville Savings Bank*, 94 Ill. 191, the court said (p. 203): "We fully recognize the doctrine that where, by the terms of a will, there is given to one an unlimited power of selling or otherwise disposing of an estate in such manner as the devisee may think fit, a limitation over is inoperative and void, by reason of its repugnance to the principal devise."

We do not think this case can be controlled by *Bergan* v. *Cahill*, 55 Ill. 160, cited in the brief, as in that case there was not an absolute power of disposition in the party to whom the property was first devised. Here there was an absolute devise of the personal property to the wife, and the limitation over in a subsequent clause of the will was inoperative and void. This case is also distinguishable from the case of *Glover* v. *Condell*, 163 Ill. 566, because in that case the will conferred no power of disposition upon the first taker, while here the first taker had absolute power of disposition.

The only remaining question relates to the rents, issues and profits arising from the farm. Clause 4 of the will, as has heretofore been seen, declares: "And I also give, devise and bequeath to my said wife the farm upon which we, my wife and myself, now reside, for and during the term of her natural life, she to have all the rents, issues and profits growing out of or arising from the same, from the time of my death, for and during her natural life." The last part of clause 7 of the will provides that all the personal property devised to his wife which at her death shall remain undisposed of, and also

all the rents, issues and profits of the property bequeathed to her, undisposed of at the time of her death, shall pass to and be divided among the nephews and nieces of his wife. Under the will the wife took a life estate in the farm, and the life estate would carry with it all rents and profits arising from the farm during the existence of the estate. Whatever rents the wife received from the farm became and were her absolute property, which she was at liberty to dispose of as she pleased. The property having been given to her coupled with the power to dispose of it as she saw proper, the condition imposed by the last part of clause 7, inconsistent with and repugnant to the gift, was void. By the limitation over the testator undertook to take away the absolute property in the rents which had been conferred on the wife by a preceding clause in the will. That could not be done. Upon the absolute transfer of an estate, the grantor cannot, by any restrictions or limitations contained in the instrument of transfer, defeat or annul the legal consequences which the law annexes to the estate thus transferred. *Steib* v. *Whitehead*, 111 Ill. 247.

In Williams on Executors (vol. 2, 7th Am. ed. p. 1265,) the rule is laid down as follows: "Among illegal conditions subsequent may be classed such as are repugnant. 'I find it laid down as a rule long ago established,' said Lord Alvanley in *Bradley* v. *Piexoto*, 'that where a gift is with a condition inconsistent with and repugnant to such gift, the condition is wholly void.' * * * 'If property,' says Lord Eldon in *Brandon* v. *Robinson*, 'is given to a man for his life, the donor cannot take away the incidents to a life estate.'" The same rule is laid down in 2 Woerner on Administration (p. 954): "A condition which is inconsistent with the estate to which it is attached is void, and the estate devised or bequeathed passes absolutely." Likewise in 2 Jarman on Wills (4th Am. ed. p. 527:) "Conditions that are repugnant to the estate to which they are annexed are absolutely void. Thus, if a testator, after

giving an estate in fee, proceeds to qualify the devise by a proviso or condition which is of such a nature as to be incompatible with the absolute dominion or ownership, the condition is nugatory and the estate absolute," etc. The doctrine is enunciated in 2 Redfield on Wills (2d ed. p. 287): "It seems to be an universal rule, that where conditions are repugnant to the estate to which they are annexed they are absolutely void."

We think, under the authorities, it is clear that the will gave to the wife an absolute estate in the personal property and the rents of the farm, and upon her death whatever remained of the proceeds of either belonged to her estate.

The judgment of the Appellate Court will be reversed. The judgment of the circuit court will also be reversed for the reason it was too small. The cause will be remanded to the circuit court for another trial in conformity to this opinion.     *Judgment reversed.*

Mr. JUSTICE CARTER took no part.