CHARLES H. WOLFE, TRUSTEE, vs. CLARA T. HATHEWAY ET ALS.

Third Judicial District, New Haven, June Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The cardinal principle in the interpretation of wills is that the intent of the testator is to be sought after and carried into effect if it can be discovered and has been sufficiently expressed, provided it is not contrary to some positive rule of law.

If a will is fairly open to two constructions, one of which will render a bequest illegal and the other valid and operative, the latter construction must be preferred.

While there is a presumption that the testator used language in its usual and legal sense, this presumption will be overthrown when an examination of the instrument in the light of surrounding circumstances clearly shows that the intent of the testator will be defeated by so interpreting it, and that the language was used in another sense. Accordingly, words of an inartifically drawn will may thus have a meaning given to them which they do not ordinarily or properly possess.

By her will executed in 1883 a testatrix gave the residue of her estate to her four sons in fee, to be equally divided between them. A codicil made six years thereafter revoked that gift as to two of them, M and J, and in lieu thereof gave $1,000 absolutely to each of them, and placed the share of the residue previously bequeathed to them, less said sum of $1,000, in trust for their

Wolfe *v.* Hatheway.

benefit, directing the trustee to pay over one half of the income to each so long as he lived, and upon the death of either or both "to their heirs at law respectively." The next sentence directed that at the death of "their wives and all the children" of the said *M* and *J*, the said property might be given directly and equally to their grandchildren, whenever they became of age and whenever or as soon as, in the judgment of the said trustees or their successors, they might think best. Neither of these sons had any grandchildren. *Held:*—

1. That it was apparent that the testatrix used the expression "heirs at law" as descriptive of the class of persons more particularly defined by her in the immediately following context as "wives and children"; and that to avoid the creation of an illegal perpetuity it ought to be so interpreted.

2. That the "wives" thus designated included only those who were such at the death of the testatrix, and not any woman who since that time might have assumed that relation.

3. That such wife and the children of each of said sons, after their respective deaths, were entitled to the income which had previously been payable to him, until the death of the last survivor in each family group respectively, when the trust as to the payment of income ceased.

4. That the provision in favor of the grandchildren was in contravention of the statute against perpetuities which was in force in 1891, when the testatrix died, and therefore the remainder, attempted to be given to them, was intestate estate.

Submitted on briefs June 9th—decided August 3d, 1908.

SUIT to determine the validity and construction of the will of Amanda B. Trulock of Bridgeport, deceased, brought to and reserved by the Superior Court in Fairfield County, *Case, J.,* upon an agreed finding of facts, for the advice of this court.

Amanda B. Trulock, late of Bridgeport, died August 20th, 1891, leaving a considerable estate, both real and personal, a will executed March 13th, 1883, and a codicil thereto executed November 23d, 1889, both duly probated. She was survived by four sons, Nichols B., J. Burton, James H., and Marshall S., who, with Clara T. Hatheway, a daughter of a deceased daughter, were her only heirs at law. Nichols B. and Marshall S. still survive, as does Clara T. Hatheway. James H. died in 1907, leaving a

widow and four children. Marshall S. has a wife and one child. The dates of the marriages of these two sons are not given in the record, although it would appear that James H. was married long before the testatrix's death and the making of her codicil. No grandchildren have yet been born to either of these sons.

The will created a trust in favor of Clara T. Hatheway, bequeathed her the testatrix's wearing apparel and jewelry, and then gave all the rest of her estate to the four sons "to be divided equally between them and to their heirs and assigns forever." The codicil was as follows:—

"Whereas, by my last will and testament, dated March 13th, 1883, in article fourth I gave and bequeathed the rest of my estate, real and personal, to my four sons, Nichols B., Joseph B., Marshall S., and James H. Trulock, to be divided equally between them and to their heirs and assigns forever, I do hereby revoke that part of this article fourth which gives to my sons Marshall S. and James H. Trulock absolutely one-fourth of my residuary property to each, and instead thereof, I do hereby give and bequeath the sum of one thousand dollars absolutely to each, and the remaining one-half of my residuary estate to my sister, Marcia Beardsley, and to my friend, Lucinda T. Montgomery, in trust; whom I hereby request, as they may deem necessary for counsel, to call upon Morris B. Beardsley, Esq., or B. B. Beardsley, my brother, both of this city of Bridgeport, Ct., and I hereby direct that the income of the said one-half of my residuary estate be *paid equally* to my two sons, Marshall and James H. Trulock, semi-annually, as long as they may live and at the death of either or both, to their heirs at law respectively. One-half of said half to Marshall S. Trulock's heirs and the other half to James H. Trulock's heirs, and I hereby direct that at the death of their wives and all the children of the said Marshall S. and James H. Trulock, that the said property may be given directly and equally to their grandchildren,

whenever they may become of age and whenever or as soon as in the judgment of the said trustees or their successors with their advisor, they may think best, and I hereby request that no bond be required of my sister, Marcia Beardsley, and Lucinda T. Montgomery, as trustees, but a bond should be required of their successors."

The estate was duly settled and final account accepted August 25th, 1892. By this account the residue of the estate was shown to be $109,707.77, all in personalty. Distribution followed, wherein the sum of $27,426.94 was set out to the trustees named in the codicil as trustees for the benefit of James H. Trulock and others, and a like sum in like manner for the benefit of Marshall S. Trulock and others. Said trustees accepted said trusts and qualified. April 3d, 1901, they resigned, and on April 13th, 1901, they were succeeded by the plaintiff, who qualified and is now acting. Other facts found, not being involved in the opinion of the court, need not be rehearsed.

*Morris B. Beardsley* and *Samuel F. Beardsley*, for the plaintiff.

*Alfred B. Beers*, for Amanda L. T. Curtis.

PRENTICE, J. The questions presented arise out of the ambiguous language which the testatrix used in the inartificially framed codicil to her will. The principles which are to be observed in interpreting the instrument are familiar ones. The cardinal rule is that the intent of the testator is to be sought after and carried into effect, if that intent can be discovered, has been sufficiently expressed, and is not contrary to some positive rule of law. *Allyn* v. *Mather*, 9 Conn. 114, 125; *Mathewson* v. *Saunders*, 11 id. 144, 149; *Jackson* v. *Alsop*, 67 id. 249, 252, 34 Atl. 1106; *Chesebro* v. *Palmer*, 68 Conn. 207, 213, 36 Atl. 42. In the search for the intent of the testator all parts of the will are to be

taken into consideration; *Allyn* v. *Mather,* 9 Conn. 114, 125; and they are to be examined in the light of the circumstances which surrounded the testator when he made his will. *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885. The question is not what did the testator mean to say, but, always, what did he say. *Weed* v. *Scofield,* 73 Conn. 670, 677, 49 Atl. 22. If a leading feature of a will is equality or impartiality, the courts will lean, in case of a doubtful clause, to such a construction as will carry out the scheme of equality. *Farnam* v. *Farnam,* 53 Conn. 281, 289, 2 Atl. 325, 5 id. 682; *Wheeler* v. *Fellowes,* 52 Conn. 238, 241. The meaning of language used cannot be determined by an arbitrary rule of legal definition, but depends in each case on the peculiar provisions and character of the special will in question, which must to a large extent be its own interpreter. *Chesebro* v. *Palmer,* 68 Conn. 207, 213, 36 Atl. 42. While there is a presumption that the testator used language in its usual and legal sense, this presumption will be overthrown when an examination of the instrument, in the light of the surrounding circumstances, clearly shows that the intent of the testator will not be effectuated by so interpreting it, and that the language was used in another sense. In such case that meaning will be attached to the language which the testator attached to it when he used it. *Gold* v. *Judson,* 21 Conn. 616, 625; *Gerard* v. *Ives,* 78 Conn. 485, 489, 62 Atl. 607. Words of an inartificially drawn will may thus have a meaning given to them which they do not ordinarily or properly possess. *Hurd* v. *Shelton,* 64 Conn. 496, 498, 30 Atl. 766. Where a testator has omitted words which are necessary to express the meaning intended, and the intended meaning is clearly inferable from the will taken as a whole, the court will by construction supply the omitted words. *Kellogg* v. *Mix,* 37 Conn. 243, 247. If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode

must be preferred. *Woodruff* v. *Marsh*, 63 Conn. 125, 136, 26 Atl. 846. There is a presumption against the intent of a testator to leave any part of his estate intestate, but a construction required by the terms of a will cannot be avoided because it leads to intestacy in whole or in part. *Warner* v. *Willard*, 54 Conn. 470, 472, 9 Atl. 136; *State* v. *Smith*, 52 Conn. 557, 563; *Jackson* v. *Alsop*, 67 id. 249, 252, 34 Atl. 1106; *Bill* v. *Payne*, 62 Conn. 140, 142, 25 Atl. 354.

The testatrix in her will treated her four sons with strict equality and impartiality. Her purpose to favor no one of them to the advantage of another, in so far as her desire to secure to each the most certain assurance of the benefits of her intended bounty could be carried into effect under the law, is equally apparent in the codicil. She originally gave one quarter of her residuary estate to each son absolutely. Circumstances apparently arose between the years 1883, when the° will was made, and 1889, when the codicil was executed, or were in the latter year foreseen as possible, which led her to the conclusion that the benefits of her bounty would be more certainly or permanently assured to her intended beneficiaries if the shares originally given to two of the sons were surrounded by the safeguards of a trust. This naturally led to provisions with respect to these shares which give the appearance of partiality, but it is only the appearance. The same quantum of property, less $1,000 given outright, is placed under the trust in each case, as was originally given absolutely, and the benefits of it are plainly intended to be confined to the son during his life, and after his death to his immediate family and stock until such stock should cease to be. The duty of expressing the testatrix's purpose in a codicil was unfortunately performed by some one who knew little of the proper use and meaning of legal words and phraseology. Nevertheless, a careful reading of the language used to embody the trusts which were desired to be created, in the

light of the accepted principles already noticed, reveals the interpretation which should be placed thereon.

The provisions which relate to the rights of the two sons Marshall S. and James H., although clumsily framed, present no questions. It is clear and conceded that to each is given the net income of one of the four equal shares into which the residuary estate is divided during his life, less $1,000. The codicil adds, "and at the death of either or both, to their heirs at law respectively." It is apparent from the immediately following context that the testatrix, in her ignorance of legal relations and legal terms, here used the term "heirs at law" as descriptive of the class of persons more particularly defined by her immediately afterward as "wives" and "children," and that to avoid the creation of an illegal perpetuity it ought to be so interpreted. This is the group of persons who would most naturally be suggested to her mind as next to her sons in the order of her scheme of trust benefactions, and as the one preceding in order the grandchildren in whose favor the next provision of the codicil ran. The wives thus designated as cobeneficiaries of income with children, will be interpreted to include only those women who occupied that position at the death of the testatrix, and not any woman or women who since that time may have come into that position. *Beers* v. *Narramore*, 61 Conn. 13, 19, 22 Atl. 1061; *St. John* v. *Dann*, 66 Conn. 401, 405, 34 Atl. 110.

The term for which the payment of income is thus directed to be made to the surviving wife and children of the sons respectively, is defined by the immediately following provisions already referred to, to wit, "and I hereby direct that at the death of their wives and all the children of the said Marshall S. and James H. Trulock, that the said property may be given directly and equally to their grandchildren," etc. This language is, of course, to be read distributively, and as though the word "respectively" had been inserted after the names of the sons, as an accurate

expression of the testatrix's manifest intent would have dictated; so that the net income derived from the share of the testatrix's estate of which the net income was payable to either of said sons during his life, becomes, upon his death, payable to his wife as aforesaid, if any, and his children, and continues to be so payable until the death of the last survivor of such wife and children, whereupon the trust to pay over to anybody income derived from said share ceases, and said share stands for distribution as principal, pursuant to other provisions of the codicil, or, in the event of their being ineffective, pursuant to the law. Until the trust to pay over the income derived from a share terminates, and the time arrives when the share is ready for distribution as principal, the property which comprises that share remains in the hands of the trustee as a trust fund.

The provisions of the codicil in favor of grandchildren of the two sons is in contravention of the statute against perpetuities, which was not repealed until after the death of the testatrix, and the remainder attempted to be given to them is intestate estate of the testatrix. *Tingier* v. *Chamberlin,* 71 Conn. 466, 42 Atl. 718. The gifts of income in favor of the wives and children as defined are not within the prohibitions of the statute, and are valid.

The Superior Court is advised to render judgment in conformity with the views above expressed.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.