*Striken from files.*

---

**Rosenbaum Bros. & Co., Appellant, v. Drumm Commission Company, Appellee.**

### Gen. No. 14,121.

1. ASSUMPSIT—*when lies for money had and received.* The test as to whether an action of assumpsit for money had and received will lie is, "does the money in justice, belong to the plaintiff, and has the defendant received the money, and should he, in justice and right, return it to the plaintiff."

2. CONTRACTS—*when mortgagee mere depositary of money.* If a sale of cattle is made at a specified price per head and part of the purchase price to be paid to a mortgagee of such cattle, a payment made by the purchaser of such cattle and placed in the hands of such mortgagee as provided for by the contract, is received by such mortgagee as a mere depositary, subject to return to such purchaser in the event of the non-performance of the contract of sale by the seller and mortgagor.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed January 18, 1909.

**Statement by the Court.** The declaration contains only the common counts, including the count for money had and received to the use of the plaintiff. The defendant, appellee here, pleaded the gen-

230 APPELLATE COURTS OF ILLINOIS.

Rosenbaum Bros. & Co. v. Drumm Commission Co., 146 App. 229.

eral issue. The court, at the close of the plaintiff's evidence, instructed the jury, on the defendant's motion, to find the issues for the defendant, which the jury did, and the court, after overruling the plaintiff's motions for a new trial and in arrest of judgment rendered judgment on the verdict. The following facts gave rise to the suit:

March 12, 1892, a contract in writing was executed between W. E. Washington, of Hagerman, New Mexico, of the first part, and Rosenbaum Bros. & Co., of Chicago, Illinois, of the second part, which contains the following:

"Witnesseth: That the said party of the first part for and in consideration of Fifteen Dollars seventy-five ($15.75) per head for One Thousand Head one year old steers, has this day bargained, sold and hereby covenants and agrees to deliver to the party of the second part f. o. b. the cars, at Hagerman, N. Mex., One Thousand head of good, smooth, full aged cattle, consisting of One Year Old Steers, between May 15th and June 15th, 1902, at the option of said party of the second part, by giving ten days' notice in writing to the said party of the first part at Hagerman, N. Mex., exclusive of stags, blinds, swaybacks, big jaws, dwarfs, cripples or cattle in any wise deformed or locoed."

The contract also contains the following:

"Party of the second part hereby agrees to receive said cattle at the time, place and on the terms and conditions herein set forth, and further agrees to make final and balance of payment to first party on said cattle at the time of delivery, and failure on the part of the second party to comply with this agreement shall cause the forfeiture to first party of the payment this day made of Three Thousand Dollars ($3,000.00).

"Party of the first part hereby acknowledge receipt from the second party of Three Thousand Dollars ($3,000.00) as a partial or advanced payment on said cattle, which shall be repaid to said party of the second part in the event of the said party of the first part failing to comply with the terms of this contract, and same shall be paid by said first party in addition to any

and all sums which shall become payable to said party of the second part by reason of any shortage in the number of head of said cattle, as hereinabove provided. Party of the first part hereby agrees to receive the balance of the payment in current exchange upon delivery of said cattle in a draft on Chicago, payable to his order through Drumm-Flato Commission Company.

"Party of the first part represents that he is the absolute owner of all of the above mentioned cattle; and that they are in every respect as good cattle as the Hat cattle owned by Scott & Robinson of same sex and age—in the opinion of the party of the second part, represented by H. E. Siders or Sam Davidson."

There are other provisions in the contract, not necessary to be stated. The name of the defendant, when suit was brought, was the Drumm-Flato Commission Co., but, after the contract was made, its name was changed to Drumm Commission Co.

The $3,000 mentioned in the contract was not paid at the date of the contract, but was paid the next day, March 13, 1902. The plaintiff received the following letter from the defendant:

"KANSAS CITY, Mo., March 13, 1902.
MESSRS. ROSENBAUM BROS. & CO.,
Chicago, Ill.

DEAR SIRS: Upon the payment to us of the sum of Fifteen & 75/100 ($15.75-100) Dollars per head for one thousand (1,000) head of yearling steers sold you by W. E. Washington, according to contract entered into between yourselves and said Washington, calling for delivery of said cattle in the R. R. shipping pens at Hagerman, New Mexico, we will execute and deliver to you a release of one chattel mortgage on the cattle so sold and delivered according to said contract, said release to cover only the cattle delivered to you under the contract.          Yours truly,
DRUMM-FLATO COM. CO.,
Per F. W. Flato, Jr.;
V. Pt."

Written in ink across the face of the last letter is this:

232    APPELLATE COURTS OF ILLINOIS.

Rosenbaum Bros. & Co. v. Drumm Commission Co., 146 App. 229.

"FORT WORTH, TEX., 3/13/'02.

Rec'd on the within mentioned contract the sum of three thousand ($3,000) dollars.

DRUM-FLATO COMM. CO.,

Per W. E. Stickney."

It was admitted that the foregoing receipt was authorized by the defendant, and that it received the money. The money was paid to defendant in the following manner: The plaintiff, Rosenbaum Bros. & Co., drew a draft on J. Rosenbaum Grain Co. for $3,000, payable to the order of W. E. Washington. Mr. Washington and Mr. Neu, plaintiff's financial manager, took the draft to the defendant. Washington then endorsed it and delivered it to the defendant, and the defendant endorsed and cashed it. From March 13, 1902, until June 24, 1902, last date included, there was considerable correspondence, by letters, between plaintiff and defendant. April 16, 1902, plaintiff wrote to defendant, informing it that the cattle had been inspected by Mr. H. E. Siders, and he had reported that they were not as represented in the contract, and that, consequently, plaintiff was forced to rescind the contract; also that Mr. Washington had offered, through Mr. Siders, to allow plaintiff a cut of from 30 to 50 per cent., which would not answer plaintiff's purpose. The letter closes by saying that plaintiff would look to defendant for the refunding of the $3,000. Defendant answered plaintiff's letter of April 16th as follows:

"KANSAS CITY, MO., Apr. 18, 1902.

MESSRS. ROSENBAUM BROS. & CO.,

Chicago, Ill.

GENTLEMEN: We beg to acknowledge receipt of your favor of April 16th, of which we note contents fully. We received a letter from W. E. Washington this morning under date of the 14th inst., but he didn't mention anything about his failure to deliver the cattle according to his contract with you, hence we have written him by this mail, enclosing him a copy of

your letter, with the request to let us hear from him without delay. As soon as we hear from him will write you again.

"We have just had reference to copies of our letters to you, written at Ft. Worth on the 12th and 13th of March, in which we agree to furnish you with the proper release of mortgage on delivery of the cattle, but they state nothing about the $3,000.00 that was paid on the contracts; however, we presume if the cattle are not delivered according to contract that this money should be refunded to you, but we should have instructions from Mr. Washington to that effect. All that he mentioned in his letter we received today was that he was hoping to make a close gather on his cattle, but doesn't intimate that your man had passed on the cattle and that he couldn't fill his contract.

Yours truly,

DRUMM-FLATO COM. CO.,

Per F. W. Flato, Jr.,

Vice Pres't."

April 23, 1902, plaintiff wrote to defendant, substantially reiterating the statement made in its letter of April 16th, to which the defendant replied as follows:

"KANSAS CITY, Mo., Apr. 25, 1902.

MESSRS. ROSENBAUM BROS. & Co.,

Chicago, Ill.

GENTLEMEN: Yours of the 23rd inst. received yesterday and Mr. Washington arrived here this morning. From what he says we judge there is quite a difference between you and him in regard to the matter. He has requested and positively directed us not to remit you the $3,000.00. We did not receive the money under any direction or agreement to repay it to you. Mr. Washington expects to carry out his agreement. We have credited Mr. Washington's debt to us with the $3,000, and you will appreciate the fact that we cannot pay it to you without his consent.

Yours truly,

DRUMM-FLATO COM. CO.,

Per F. A. Flato, Jr., Vice Pres."

234    Appellate Courts of Illinois.

Rosenbaum Bros. & Co. v. Drumm Commission Co., 146 App. 229.

In subsequent letters the plaintiff insisted on the return to it by the defendant of the $3,000, and the defendant refused to return the money unless by Washington's consent. June 24, 1902, plaintiff wrote to defendant, informing it that it had drawn a draft on it for $3,000, in favor of Barse Live Stock Commission Co., attaching thereto defendant's receipt of March 13, 1902. This draft was put in evidence by the plaintiff, with notice of its protest.

"The court having announced that, under the law, the plaintiff could not recover, even though it showed that the contract, entered into between the plaintiff and Washington, had not been complied with on the part of Washington, and that no cattle had been offered or tendered to the plaintiff, in accordance with the terms of said contract," it was stipulated between the parties that, instead of asking questions of the various witnesses, the attorney for the plaintiff should make an offer, as to what he expected to prove by the witness, Joseph Rosenbaum, and the witness H. E. Siders, who were present in court; whereupon the plaintiff offered to prove by Rosenbaum that subsequently to the payment of the money, Mr. Stickney, representative of the defendant, said to him that the money which had been received upon the contract would be refunded if the cattle were not up to contract. The offer of proof by Siders is very lengthy, but is, in substance, that he, Siders, had made a thorough examination of the cattle and that they were not as good as the Hat cattle, but were an inferior grade in size, color and other respects, and that they complied, in no respect, with the terms of the contract, and that the plaintiff had lived up to the contract. Plaintiff further offered to prove by the witness, Rosenbaum, that the plaintiff had not received any of the cattle, and that the defendant had not released any of them from the mortgage, and that demand had been made on the defendant for the return to plaintiff of the $3,000 paid, and that payment of the draft in favor

of the Barse Co. had been refused. The court, on defendant's objections, excluded all the evidence offered except the offer of the evidence of Rosenbaum that a demand for the $3,000 had been made, and the refusal by defendant of the draft drawn in favor of Barse Live Stock Commission Co.

MAYER, MEYER & AUSTRIAN, for appellant.

JOHN GIBSON HALE, BOTSFORD, DEATHERAGE, YOUNG & CREASON and JAMES S. BOTSFORD, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The theory of appellant's counsel is that, on the hypothesis that Mr. W. E. Washington has failed to comply with his contract, which hypothesis must be assumed, for the purpose of the argument, the plaintiff is entitled, in equity and good conscience, to a return of the $3,000 from the defendant. The contention of counsel for the defendant is, that by the terms of the contract between Washington and the plaintiff, the $3,000 paid by plaintiff is to be returned by Washington, in the event of his failure to comply with the terms of the contract, and that, such being Washington's express promise, there can be no recovery against the defendant, on an implied promise or othererwise. In order to ascertain the understanding and intention of the parties, Washington, Rosenbaum Bros. & Co. and the Drumm Commission Co., it is necessary, not only to consider the contract and the writings referred to in the preceding statement of facts, but also to place ourselves, as nearly as possible, in the place of the parties, respectively, keeping in mind their respective interests in the subject-matter, and their conduct in respect to it. The price at which Washington sold the cattle to the plaintiff, $15.75 per head, was the sum per head for which they were mortgaged to the defendant, the Drumm Commission Co.

236    APPELLATE COURTS OF ILLINOIS.

Rosenbaum Bros. & Co. v. Drumm Commission Co., 146 App. 229.

Therefore, it was Washington's interest to pay his debt to that company, and have the security for it, the chattel mortgage, released as to the cattle sold by him to the plaintiff. It was also the interest of the defendant to have Washington's debt to it paid, and it was clearly the interest both of the plaintiff and the defendant, that the money paid by plaintiff should be placed in the defendant's hands, as otherwise the defendant would not release the mortgage on the cattle which the plaintiff has purchased from Washington. Hence the cash payment of $3,000 was, in substance, made to the defendant, and hence, also, this provision in the contract: "Party of the first part hereby agrees to receive the balance in current exchange, upon delivery of said cattle, in a draft on Chicago, payable to his order, *through Drumm-Flato Commission Company*." That it was the understanding of the defendant that the purchase price of the cattle should be placed in its hands by the plaintiff, is, we think, evident from its letter of April 18, 1902, set out in the preceding statement. That letter is not addressed to Mr. Washington, but to Rosenbaum Bros. & Co., and reads thus: "Upon the payment to us of the sum of fifteen & 75/100 (15.75-100) dollars per head, for one thousand head of yearling steers sold you by W. E. Washington, according to contract between yourselves and said Washington * * * * we will execute and deliver to you a release of one chattel mortgage on the cattle," etc. And, as if to leave no doubt of defendant's understanding that the money due, or to become due, on the contract, was to be paid to it, this is written by it across the face of its letter:

"Fort Worth, Tex., 3-13-02. Rec'd on the within mentioned contract the sum of three thousand (3,000) dollars. Drumm-Flato Commission Co., per W. B. Stickney." The words "the within mentioned contract" can only refer to the contract mentioned in the letter, viz., the contract between W. E. Washington and the plaintiff. We cannot escape the conclusion

that the defendant was, with the understanding of Washington, the plaintiff and itself, a mere depositary of the cash payment of $3,000, the deposit to abide the result of the contract, with a possible interest in defendant, depending on the performance of the contract of March 12, 1902, by both parties to that contract; but with the duty incumbent on defendant to return the money to the plaintiff, in the event that Washington should fail to comply with the contract. This, also, seems to have been defendant's understanding, as in its letter of April 18th to the plaintiff, it says: "We presume, if the cattle are not delivered according to contract, that the money should be refunded to you, but we should have instructions from Mr. Washington to that effect." We fail to perceive the necessity of Washington's consent or instruction to a return of the money to the plaintiff, if Washington substantially failed to perform his part of the contract with the plaintiff. In such case he would not be entitled to the money or any part of it, and it is for the defendant, who has the money, to return it. Defendant admits possession of the money, and if Washington has failed to perform his contract, neither he nor defendant has any interest in it, and no sound reason is perceived why it should not be returned to the plaintiff, whose money it is. The defendant does not claim any interest in it.

The test, as to whether an action for money had and received will lie, is, "does the money, in justice, belong to the plaintiff, and has the defendant received the money, and should he, in justice and right, return it to the plaintiff." Wilson v. Turner, 164 Ill. 398, 403; First Nat. Bank of Springfield v. Gatton, 172 *ib.* 625; Allen v. Stenger, 74 *ib.* 119; Barnes v. Johnson, 84 *ib.* 95; 15 Am. & Eng. Ency. of Law, p. 1096.

Privity of contract is not necessary to a recovery. First National Bank v. Gatton, *supra.*

We are of opinion that the learned judge of the trial court erred in holding that there could be no

recovery, even though Washington did not comply with the contract between him and the plaintiff. We understand the cause to have been decided on the sole ground that Washington, and not the defendant, is liable, in the event of Washington's failure to fulfill his contact. The court excluded offered evidence to prove that Washington did not perform his contract with the plaintiff, so that the question whether he did or not is not before us.

If the defendant still believes, in good faith, that Washington's consent is necessary to its protection, in case it shall return the money to the plaintiff, it may, out of abundant caution, notify Washington to defend the suit.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*